UNITED STATES of America ex rel. Charles A. WRIGHT, Petitioner-Appellant,

v.

Joseph WOODS, Respondent-Appellee.

No. 18045.

United States Court of Appeals, Seventh Circuit.

Oct. 8, 1970.

---

Sam Adam, Howard D. Geter, Sr., Howard D. Geter, Jr., Edward M. Genson, Chicago, Ill., for petitioner-appellant.

John R. McClory, Asst. State's Atty., Edward V. Hanrahan, State's Atty., Chicago, Ill., for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

This case is on appeal from the district court's denial of a petition for writ of habeas corpus. The question presented by the petition is whether under the Fourth and Fourteenth Amendments, police without a search or arrest warrant may forcibly enter an apartment being used solely for gambling in order to make arrests for a gambling offense.

At petitioner's bench trial, evidence seized at the time of his arrest was introduced over objection. He was convicted for gambling and sentenced to 3 months' confinement in the County Jail and to pay a $300 fine. This misdemeanor conviction was affirmed by the Illinois Supreme Court. People v. Wright, 42 Ill.2d 170, 242 N.E.2d 180 (1968), certiorari denied, 395 U.S. 933, 89 S.Ct. 1993, 23 L.Ed.2d 448.

The petition and the Illinois Supreme Court's opinion show that on November 24, 1965, Chicago policeman Herman Waller secured a search warrant for the second floor apartment at 1702 North Bissell Street, Chicago, based on information that a numbers game or policy operation was occurring there nightly around 10 p. m. He and four other officers arrived outside the premises at 9:30 p. m. on that date to establish a surveillance of the building. Waller, who had made approximately 300 prior "policy" arrests, noticed that persons reportedly engaged in this illicit operation were entering the first floor apartment. He recognized some of them as policy "runners" whom he had arrested previously. After 35 minutes in front of the apartment building, he moved to a position under the elevated tracks of the Chicago Transit Authority that was one to three feet from a partially covered rear window of the first floor apartment. He could see the heads of the persons inside, could hear an adding machine being operated, and a feminine voice inquiring, "Are all your books in? Who has any short books? Where is all the money?" He knew that a "short book" referred to the situation where a policy runner does not have enough

money to "clear" his bets on a particular book, and he also knew that adding machines were commonly used to add up the sums of money collected in policy gambling operations.

Aften ten minutes' observation at the rear window, Waller knocked at the front door of the apartment and announced his office. After the person answering told him to "get lost," Waller forced his way into the apartment. He proceeded to the kitchen in the back of the apartment where he observed three persons sitting at a table with an adding machine, policy writings, and policy results thereon. Petitioner then yelled "Police" and threw a bag containing $179.35 behind a washing machine. A search of two other persons in the kitchen revealed that they were carrying policy writings and money in their pockets. One of them told Waller, "Okay, you got me. Let's go," and the other remarked. "Well you have finally got me." Petitioner asked Waller, "Well, why don't you go out and leave this policy alone?"

■■ By now it is well settled that search incident to a lawful arrest is usually permissible without a warrant. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. In such circumstances, the validity of the search depends initially upon the lawfulness of the arrest. This, in turn, rests upon the applicable state law. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; cf. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Miller v. United States, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

Petitioner does not challenge the legality of his arrest under Illinois law. Chapter 38, Section 107–2 permits a police officer to make a warrantless arrest where "[h]e has reasonable grounds to believe that the person is committing or has committed an offense," including a misdemeanor specified in a municipal ordinance. People of

Illinois v. Edge, 406 Ill. 490, 497, 94 N.E.2d 359 (1950). The Illinois Supreme Court, reviewing the legality of petitioner's arrest, correctly concluded that prior to entry into the apartment, Waller had probable cause to make the arrests of the offenders within. People v. Wright, 41 Ill.2d 170, 242 N.E.2d 180 (1968), certiorari denied, 395 U.S. 933, 89 S.Ct. 1993, 23 L.Ed.2d 448. By dint of the informant's tip and his own observations at the scene, Waller reasonably believed that a policy operation was being conducted on the first floor of these premises. He had recognized known policy runners entering the first floor apartment at the appointed hour of ten o'clock, and he heard and saw the operation in action from outside the rear window of that apartment. The officer forced entry into the apartment only after he had announced his authority and purpose and had been refused admittance by the occupants. Cf. People v. Sprovieri, 43 Ill.2d 223, 252 N.E.2d 531 (1969). Finally, the search was properly confined to petitioner's person and the immediate area where he could have obtained destructible items that could have been used as evidence against him. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409; see also United States v. Frierson, 299 F.2d 763, 766 (7th Cir. 1962); United States v. Syler, 430 F.2d 68, 70 (7th Cir. 1970).

■ Petitioner disputes none of these conclusions. He insists, however, that the entry of the arresting officers violated the Fourth and Fourteenth Amendments because Waller lacked a valid warrant.[1] He claims that the Constitution conditions entry into a private building to arrest for a non-violent misdemeanor upon the possession of a valid warrant. We find no such constitutional constriction upon the states.

Justification of a search as incident to an arrest may require examination of the arrest "to determine whether notwithstanding its legality under state law, the method of entering the home

---

1. The search warrant was quashed because it covered only the second floor apartment.

may offend federal constitutional standards of reasonableness and therefore vitiate the legality of an accompanying search." Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1628, 10 L.Ed.2d 726. The Constitution has never, however been read absolutely to require a search or arrest warrant as a precondition to entry into private buildings, regardless of the attendant circumstances. States have not been held under a constitutional compulsion to justify warrantless searches in accordance with subtle distinctions between felonies and misdemeanors, or between violent and nonviolent crimes.[2] Thus in Ker the Court refused to declare unconstitutional the warrantless and unannounced entry of state police officers to arrest suspects for the possession of marijuana.[3]

We find nothing in the cases relied upon by petitioner which casts doubt upon these conclusions. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, held invalid a search incident to an unlawful arrest where the arresting officer did not have probable cause prior to his entry into the room. 333 U.S. at p. 16, 68 S.Ct. 367.

In McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, the Court followed Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, and held that even assuming a lawful arrest, the incidental search was unjustified where officers deliberately circumvented warrant procedures with no excuse other than inconvenience and delay. Here there was no deliberate disregard of approved warrant procedures. The police had already obtained a search warrant which was technically defective through no fault of theirs. Unlike McDonald and Trupiano, there is no indication of prolonged surveillance which might negate the necessity of prompt action by the police once they had obtained probable cause to make the arrests in question. Moreover, in McDonald, the propriety of police action was further clouded by the misconduct of police in breaking into the landlady's bedroom and thereafter using a chair to spy through a transom into the private room of the suspect in order to obtain probable cause to arrest him. 335 U.S. at pp. 458–459, 69 S.Ct. 191 (concurring opinion of Justice Jackson).

■ Finally, in Regalado v. California, 374 U.S. 497, 83 S.Ct. 1875, 10 L.Ed.2d 1044 (per curiam), the Court remanded for further consideration in light of Ker and McDonald a judgment of conviction stemming from a search incident to an arrest. Probable cause for the arrest had been obtained by police peeking through a peephole illegally drilled in the defendant's door. On remand the California District Court of Appeal held that the seized articles should not have been admitted into evidence because the officers had obtained probable cause by means of that illegal search. People v. Regalado, 224 Cal. App.2d 586, 36 Cal.Rptr. 795 (1964). In the present case, Waller's pre-entry observations were not made on the premises but from adjacent land of the Chicago Transit Authority which was accessible to the public. Since the means by which police obtained probable cause in the instant case were not illegal, they did not taint the subsequent search.

Affirmed.

2. The offense with which defendant was charged, though a misdemeanor, was hardly trivial. Moreover, many of those observed entering the building by the police, including petitioner, had prior gambling convictions and were therefore liable to prosecution as felons. Ill.Rev.Stat. ch. 38, § 28–1(c) (1965).

3. A fortiori, the use of a warrantless entry would seem to be constitutionally permissible in the case of proper police announcements. In Ker, Justice Clark, writing for himself and three others, concluded that the unannounced entry by means of a pass key was "the legal equivalent of a 'breaking,'" yet was not therefore automatically unconstitutionally unreasonable. 374 U.S. at pp. 38–41, 83 S.Ct. at p. 1632. Justice Harlan concurred on the broader ground that federal standards of "reasonableness" should not be applied to states under the Due Process Clause of the Fourteenth Amendment. The four dissenting Justices objected not to the lack of a warrant, but to the unannounced police intrusion into the private home.