STATE OF NEBRASKA, APPELLEE, V. FRANKLIN L. THOMPSON, APPELLANT.

241 N. W. 2d 511

Filed April 28, 1976. No. 40391.

T. Clement Gaughan and Dennis G. Carlson, for appellant.

Paul L. Douglas, Attorney General, and Steven C. Smith, for appellee.

Heard before SPENCER, BOSLAUGH, and CLINTON, JJ., and FAHRNBRUCH and GRANT, District Judges.

BOSLAUGH, J.

The defendant was convicted in county court of unlawful possession of marijuana. Upon appeal to the District Court the finding of guilty was affirmed and a fine of $100 imposed. The defendant has appealed to this court and contends the judgment should be reversed because he was convicted upon evidence which should have been suppressed because it had been obtained by an unlawful search and seizure.

The record shows the defendant was arrested in a residence at 1535 North 15th Street in Lincoln, Nebraska. This property had been under surveillance for about a month because the police suspected that controlled substances were being sold or delivered from the property.

On March 14, 1975, at about 9:15 p.m., two police officers were stationed in the alley behind the property. From the alley they could see through a rear window into the house and observe what was happening in the living room. There was a sheer curtain across the window but the drapes had been pulled back. Using binoculars, Officer Bullock saw a man, later identified as Whitney, smoking a cigarette that was being held in a pair of scissors. After taking the cigarette up to his mouth and smoking from it Whitney would pass it to his right. A short time later the cigarette would be returned to Whitney and he would smoke from it again.

The officers then went to the front of the house and knocked on the front door. Whitney opened the door and the officers walked into the living room. They displayed their badges and stated they were police officers. The defendant was sitting on a couch along the north wall to the right of where Whitney had been seated. The defendant had a pair of scissors in his hand and there was a hand-rolled cigarette and a package of cigarette papers to his left. There was a fairly strong odor of marijuana inside the residence.

The officers announced those present were under arrest for being in a place where a controlled substance was

being used and for unlawful possession of marijuana.

The defendant contends his motion to suppress the evidence seized at the time of the arrest should have been sustained because it was obtained by an unlawful search and seizure. The State claims the search and seizure was incident to a lawful arrest.

The evidence shows the officers observed a marijuana party in progress and then arrested the participants. The officers had a right to be in the alley and there was nothing unlawful in their use of binoculars. See, United States v. Lee, 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202; Johnson v. State, 2 Md. App. 300, 234 A. 2d 464; Commonwealth v. Hernley, 216 Pa. Super. 177, 263 A. 2d 904; United States v. Minton, 488 F. 2d 37; Fullbright v. United States, 392 F. 2d 432; Annotation, 48 A. L. R. 3d 1178; On Lee v. United States, 343 U. S. 747, 72 S. Ct. 967, 96 L. Ed. 1270. A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe the person has committed a misdemeanor in his presence, or has committed a misdemeanor and the officer has reasonable cause to believe the person will not be apprehended unless immediately arrested or may destroy or conceal evidence of the commission of the misdemeanor. § 29-404.02, R. S. Supp., 1974.

The arrest in this case was justified under the statute. The search and seizure was incident to a lawful arrest and was, therefore, not unlawful.

The judgment of the District Court is affirmed.

AFFIRMED.

GRANT, District Judge, dissenting.

I recognize that the Fourth Amendment protects people, not places, and its reach cannot turn on the presence or absence of physical intrusion into any given enclosure; and that what a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection. See Katz v. United States, 389 U. S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576. Defendant, in this case, was seated in the living room of

his home with the drapes in that room drawn and was so situated that he was not visible from outside. A guest in the home could be seen, with the aid of binoculars, from a little-used alley behind the home, through a fully sheer-curtained window in an adjoining room which window was also partially covered by drapes drawn back and by potted plants placed in front of it. I feel that defendant has brought himself within the general rule referred to by Mr. Justice Harlan concurring in Katz v. United States, *supra,* to the effect that in order to avail himself of Fourth Amendment protection, a defendant must "have exhibited an actual (subjective) expectation of privacy, and * * * that the expectation be one that society is prepared to recognize as 'reasonable'." The conduct of the police in this case in peering through what amounts to a crack in the wall of defendant's home infringes on defendant's constitutionally protected right to be free of warrantless governmental intrusion into his home. I feel the motion to suppress should have been sustained in toto. I respectfully dissent.

CLINTON, J., dissenting.

I dissent. Because the reasons for my position are different from those given by Grant, D.J., I must separately state them. The case authority recited in the majority opinion does support the proposition that factual information obtained by the use of binoculars to penetrate a premises without physical trespass may be used to show probable cause. I do not quarrel with that proposition. However, the cases in question do not support the warrantless entry and search of a residence absent probable cause and exigent circumstances.

The majority opinion also relies, unjustifiably I believe, upon the provisions of section 29-404.02, R. S. Supp., 1974, to support a warrantless search of a residence. Because there is no analysis relating the evidentiary facts to the statute on which the court relies, it is difficult to determine the rationale of the majority.

I do not believe the statute was intended to authorize the warrantless entry and search of a home, absent probable cause and exigent circumstances, or other recognized exceptions to the warrant requirements. Nor do I think the Legislature ever contemplated that the statute means that a misdemeanor committed in one's home is committed in the presence of the officer when the officer is neither in the home nor on the premises. The facts in this case do not demonstrate exigent circumstances even if we assume probable cause.

The record indicates that the investigating officers observed through binoculars an individual, not the defendant, smoking a cigarette and passing it to another person who could not be observed. For reasons which are not disclosed by the record, these officers believed that the cigarette contained marijuana. They then went to the front door of the residence. One of the officers drew his gun. The other officer knocked on the door. When the door was opened, the officers apparently identified themselves as police officers and then, without invitation, entered. Only one of the officers testified at the suppression hearing. He stated that he saw the defendant seated in a chair and beside him on a table was a cigarette later determined to be marijuana. He apparently did not, however, see the cigarette until he entered. This officer further testified that he had at no time any reason to believe the defendant was about to leave the house or the city. He testified to no facts leading to a conclusion that evidence was about to be destroyed. It might, of course, be inferred that the cigarette being smoked would be consumed in the process.

It is my view that a search warrant was required under the circumstances before the officers were entitled to enter the home to seize and search.

I now discuss the authorities on which the majority opinion relies. In Johnson v. State, 2 Md. App. 300, 234 A. 2d 464, the court held only that binocular observa-

tions were proper to show probable cause for issuance of a search warrant. That case is not authority for a warrantless search of a residence. In Commonwealth v. Hernley, 216 Pa. Super. 177, 263 A. 2d 904, again the long-range observations by binoculars were used to obtain a warrant for search of a print shop for evidence of illegal gambling. United States v. Lee, 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202, involved the search of a boat on the high seas after searchlight observation. The charge in that case was smuggling. In On Lee v. United States, 343 U. S. 747, 72 S. Ct. 967, 96 L. Ed. 1270, the issue involved use of admissions obtained through a bugged informer. The place involved was a place of business which the public was entitled to enter. It has no application here. In Fullbright v. United States, 392 F. 2d 432, the search (of a shed, not a residence) was made with a warrant obtained on the basis of information obtained in part by observations made through binoculars. All the above cases involved felonies. In United States v. Minton, 488 F. 2d 37, the officers made observations of a van being unloaded at a warehouse. They then approached, observed, and smelled illegal liquor being unloaded. A felony was being committed in their actual presence. No warrant was required. None of the above cases is authority for the warrantless search of a residence.

This court, up until this time, has insisted upon the necessity of a warrant for a search of a home absent one of the recognized exceptions for warrantless search. No exigencies existed here. For circumstances which justify warrantless entry and search, see State v. Patterson, 192 Neb. 308, 220 N. W. 2d 235.

I do not deny that there are cases (although the majority opinion does not cite them) which hold that a misdemeanor is committed in an officer's presence when he observes its commission through a window and may thus enter without warrant even without the existence of exigent circumstances. Griffin v. State, 200 Md. 569,

92 A. 2d 743, cert. den. 345 U. S. 907, 73 S. Ct. 647, 97 L. Ed. 1343; United States ex rel. Wright v. Woods, 432 F. 2d 1143, cert. den. 401 U. S. 966, 91 S. Ct. 983, 28 L. Ed. 2d 248. However, I believe that the history of warrantless arrests for misdemeanors supports the view that warrantless entry of a home to arrest for a misdemeanor or to search for evidence of such misdemeanor absent exigent circumstances is unreasonable in the constitutional sense. See Commonwealth v. Krubeck, 23 Pa. Co. 35, 8 Pa. Dist. 521 (1899).

At common law, an officer could arrest a party for a misdemeanor without a warrant only if the misdemeanor was committed in his presence *and* a breach of peace was involved. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543; United States v. Coplon, 185 F. 2d 629, cert. den. 342 U. S. 920, 72 S. Ct. 362, 96 L. Ed. 688. In marked contrast, the common law doctrine in this state is that an officer may make a warrantless arrest of a party for a felony even though the felony is not committed in his presence. United States v. Coplon, *supra*; State v. Russ, 193 Neb. 308, 226 N. W. 2d 775. The policy reason for severely curtailing warrantless arrests for misdemeanors while at the same time expanding the right to make such an arrest for a felony was stated by the United States Supreme Court in Carroll v. United States, *supra*: "The reason for arrest for misdemeanors without warrant at common law was promptly to suppress breaches of the peace, 1 Stephen, History of Criminal Law, 193, while the reason for arrest without warrant on a reliable report of a felony was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant." See, also, State v. Mobley, 240 N. C. 476, 83 S. E. 2d 100; Comment, "Arrest With and Without a Warrant," 75 U. Pa. L. Rev. 485. Because of the overriding public interest in apprehension of felons, the United States Supreme Court has indicated that there is no require-

ment of exigent circumstances before a warrantless arrest can be made. Trupiano v. United States, 334 U. S. 699, 68 S. Ct. 1229, 92 L. Ed. 1663, reversed in part on other grounds in United States v. Rabinowitz, 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653; also Dailey v. United States, 261 F. 2d 870, cert. den. 359 U. S. 969, 79 S. Ct. 881, 3 L. Ed. 2d 836; and Smith v. United States, 254 F. 2d 751, cert. den. 357 U. S. 937, 78 S. Ct. 1388, 2 L. Ed. 2d 1552.

The question then is whether an officer should be allowed to enter a residence without warrant and arrest a party for a misdemeanor under section 29-404.02, R. S. Supp., 1974, absent an exigent circumstance for doing so. I think not. In reaching that conclusion I would weigh the interest of society in the apprehension of a misdemeanant against the interest of a person in the constitutional privacy of his home as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States.

Nebraska's interest in the apprehension of a misdemeanant has been expressed both judicially and legislatively. In a case in which the warrantless arrest occurred prior to the effective date of section 29-404.02, R. S. Supp., 1974, this court held that a "police officer may arrest for a misdemeanor committed or attempted in his presence" without a warrant. State v. Reeder, 183 Neb. 425, 160 N. W. 2d 753. The Reeder position was adopted by the Legislature at section 29-404.02, R. S. Supp., 1974, which states in part that a "peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person . . . (2) . . . (d) has committed a misdemeanor in the presence of the officer." Both the Reeder case and the statute depart from the common law to the extent that there is no requirement that the misdemeanor must involve a breach of the peace. However, this modification cannot be read to mean that the Legislature intended that the police may enter a home to make a

warrantless arrest for a misdemeanor absent an exigent circumstance. If, for example, a police officer should observe through a window a man beating a woman he ought to be able to enter. On the other hand, an officer should not be permitted to enter a residence to make a warrantless arrest for a misdemeanor (not involving a breach of the peace or other exigent circumstance) where the Legislature has seen fit to punish such activity only with a small fine or jail sentence. The Legislature, in defining the punishment, has indicated that the harm generated by the offense is not of great detriment to the public. In comparison, a person's right to privacy in his residence is a constitutional guarantee flowing from the Fourth Amendment. This guarantee is reduced to an intolerable minimum if officers may at will enter a house without a warrant to arrest a person for a misdemeanor.