UNITED STATES of America, Plaintiff-Appellee,

v.

Leo Joseph SAITTA and James Patrick Westfall, Defendants-Appellants.

No. 79–5055.

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1980.

---

**206**

Janet F. Perlman, J. Richard Young, Asst. Federal Public Defenders, Atlanta, Ga., for Westfall.

Gerald L. Shargel, New York City, for Saitta.

James E. Fagan, Jr., Asst. U. S. Atty., Atlanta, Ga., for the U. S.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

GODBOLD, Circuit Judge:

The defendants were convicted of counterfeiting offenses. 18 U.S.C. §§ 471, 472 and 474. Secret Service agents surveilled defendants at a one-story commercial printing shop owned by Westfall and located in a group of several small commercial establishments. During night hours, using 9-power binoculars and a 20-power hand-held telescope that could zoom to 40-power (both were commercially available), the agents observed defendants through a gap between the blinds covering the front windows of Westfall's shop. The windows opened onto the sidewalk in front of the building. The agents saw them examining layout sheets containing negatives of counterfeit Federal Reserve notes. This magnified observation was part of the basis for a search warrant obtained by telephone from a U. S. Magistrate.[1] Defendants assert that this mechanically assisted viewing of the interior of the print shop was a violation of the Fourth Amendment—that in itself it was an unlawful search and also could not be used as part of the basis for the search warrant.[2]

■ It is not necessary that we decide this issue because we conclude that the warrant was valid even without the fruits of the observation through the telescope and binoculars.

Following is a transcript of relevant parts of the telephone conversation between Secret Service agent Kivett ("K") and Magistrate Feldman ("F").

K: OK, on 4/28/78, a Leo Joseph Saitta, told a Special Agent of the Secret Service, who was operating in an undercover capacity, that he, Saitta, was going to have counterfeit currency printed and would sell it to the agent. The agent gave Saitta $700.00 in genuine currency, which Saitta said he was going to use to purchase ink and paper, that he would locate a printer on 4/29/78, and print up the counterfeit, which was to be delivered on the

---

1. Issuance of a warrant based upon sworn oral testimony communicated by telephone is authorized by Fed.R.Crim.P. 41(c)(2) (effective October 1, 1977).

2. Defendants rely principally upon *U. S. v. Kim*, 415 F.Supp. 1252 (D.Hawaii 1976) (observation into defendant's apartment and of his balcony, conducted from 160 feet away, and ¼ of a mile away, through telescope and binoculars, held an invalid search; similar observation of those walking from elevator to defendant's apartment, by way of an outdoor terrace, held not invalid). *See also, People v. Arno*, 90 Cal. App.3d 505, 153 Cal.Rptr. 624 (1979). *Contra, On Lee v. U. S.*, 343 U.S. 747, 754, 72 S.Ct. 967, 96 L.Ed. 1270, 1276 (1952) (dicta); *Fullbright v. U. S.*, 392 F.2d 432 (10th Cir.), *cert. denied*, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968); *Hodges v. U. S.*, 243 F.2d 281 (5th Cir. 1957); *Johnson v. State*, 2 Md.App. 300, 234 A.2d 464 (1967); *State v. Thompson*, 196 Neb. 55, 241 N.W.2d 511 (1976); *Commonwealth v. Hernley*, 216 Pa.Super. 177, 263 A.2d 904 (1970), *cert. denied*, 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813 (1971); *State v. Manly*, 85 Wash.2d 120, 530 P.2d 306, *cert denied sub nom., McIntire v. Washington*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 81 (1975); *but cf. State v. Loyd*, 435 P.2d 797 (Idaho 1967) (use of flashlight to look into car).

afternoon of 4/30/78. Saitta was under surveillance on 4/29/78, by agents of the Secret Service, when he flew from Jacksonville, Fla., to Atlanta, Ga., where he made several telephone calls and a short time later was met at the airport by James Patrick Westfall. They drove from the airport to J & C Graphics, 1168 Richards Dr., I'm sorry, Richards Rd., Decatur, Ga., which is operated by Westfall. They entered the graphic shop at 11:47 AM, 4/29/78. Westfall has left and returned twice but Saitta is still there and they are both are [sic] there at this time. Special Agents James M. Beary, Jr. and Stephen W. Schenk have personally observed both Saitta and Westfall working on negatives of Federal Reserve Notes. They recognize these as negatives based on their years of experience as Secret Service Agents, by their size and shape, which is that of the back of Federal Reserve Notes, as indicated by the schroll (sic) and lathe work around the corners and sides. The negatives were in goldenrod paper, which is used prior to burning plates from negatives. They also observed Westfall holding up the goldenrod paper, with the negatives in it, as if checking his workmanship. SA Beary also observed goldenrod paper with cuts in it the same shape and size as the Treasury Seal and Serial No.'s on Federal Reserve Notes. In order for Saitta to have counterfeit currency ready to deliver by tomorrow afternoon, the printing must begin immediately. It should also be noted that Westfall has been previously convicted for printing counterfeit FRN's. Agents Beary and Schenk are continuing their surveillance of Westfall and Saitta in the J & C Graphics.

\*    \*    \*    \*    \*    \*

F: Do you have any previous information on whether or not Saitta has a prior criminal record[?]

K: Yes sir, he does have a prior criminal record, he has an FBI number, I'm not . . . don't know exactly what his record is, but he does have an FBI number so that means he would have a prior criminal record.

\*    \*    \*    \*    \*    \*

F: And you say Westfall has previously been convicted.

K: Westfall was, has previously been convicted, yes sir, and if you will hold on one moment I can find that information for you if you'll like.

F: OK

K: Hold on.

K: I don't have the date, Judge, but it was under our Secret Service file # J–315–CO–3373–2.

F: Alright [sic], now,

K: He was arrested after passing these notes in New Iberia, Louisiana, I don't have the date.

Summarizing, here is what the magistrate knew:

—On May 28 Saitta told an undercover Secret Service agent that he would have counterfeit currency printed and would sell it to the agent.

—The agent gave Saitta $700 which Saitta said he would use to purchase ink and paper.

—Saitta said he would locate a printer on May 29 and print up the money.

—The money was to be delivered on the afternoon of May 30.

—Saitta flew to Atlanta and was met at the airport by Westfall. They went to Westfall's printing shop, arriving there at 11:47 a. m. Westfall came and went but Saitta was still there at 9:36 p. m.

—In order for Saitta to have the counterfeit currency ready to deliver on the afternoon of May 30, the printing would have to begin immediately.

—Westfall previously had been convicted for printing counterfeit Federal Reserve notes.

—Saitta had a prior criminal record.

—Westfall had been arrested after passing "these [counterfeit] notes" in New Iberia, Louisiana.

■ These circumstances adequately established probable cause to believe that criminal activity was going on in the print shop, and, even more specifically, criminal activity related to printing or preparation for printing of the counterfeit currency that Saitta had agreed would be delivered less than 24 hours later. As a result, we need not reach the appellants' allegations regarding the binocular-telescope search, particularly where, as here, the independent information was obtained prior to the search and thus was not even arguably "fruit of a poisonous tree." *See U. S. v. Giordano*, 416 U.S. 505, 554–56, 94 S.Ct. 1820, 1845, 40 L.Ed.2d 341, 375–76 (1974) (Powell, J., concurring in part and dissenting in part, joined by Burger, C. J. and Blackmun and Rehnquist, JJ.); *U. S. v. Williams* 594 F.2d 86, 95 n.17 (5th Cir. 1979); *U. S. v. Tarrant* 460 F.2d 701, 703–04 (5th Cir. 1972); *U. S. v. Marchand*, 564 F.2d 983, 992–94 (2d Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *Howell v. Cupp*, 427 F.2d 36, 38 (9th Cir. 1970); *James v. U. S.,* 135 U.S.App.D.C. 314, 418 F.2d 1150 (D.C.Cir.1969); *U. S. v. Sterling*, 369 F.2d 799, 802 (3d Cir. 1966).[3]

AFFIRMED.

---

**3.** Westfall, and possibly Saitta also, contended below that the warrant was invalid because Westfall had not been convicted for counterfeiting Federal Reserve notes but had been tried and convicted in United States court in Corpus Christi, Texas, for the offense of interstate forgery. The record at the motion to suppress hearing showed that Westfall had been charged with possessing and passing counterfeit currency but that the complaint was dismissed and that he pleaded guilty to the charge of interstate forgery. Kivett's statement to the magistrate was based upon a teletype from the San Antonio, Texas, office of the Secret Service which indicated that Westfall had been convicted of counterfeiting. Relying upon *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the district court held that the erroneous statements to the magistrate concerning Westfall's conviction were not made knowingly or intentionally or with a reckless disregard of the truth, and that even without the statement that Westfall had been convicted of counterfeiting the information given by Kivett established probable cause. Neither defendant raises on appeal Kivett's misstatement as a basis for invalidating the warrant. Nevertheless, since we base our decision upon examination of the adequacy of probable cause without the fruits of the aural observation, we consider the sufficiency of the information before the magistrate without including the erroneous statement that Westfall had been convicted of counterfeiting, and hold that it was adequate.