47 P.3d 127 (2002)
146 Wash.2d 400
STATE of Washington, Respondent,
v.
Leopoldo Cuevas CARDENAS, Petitioner.
No. 70855-0.
Supreme Court of Washington, En Banc.
Argued October 25, 2001.
Decided May 23, 2002.
*128 Hugh Spall, Ellensburg, for Petitioner.
Jeffrey Sullivan, Yakima County Prosecutor, Kevin Eilmes, Deputy, Yakima, for Respondent.
MADSEN, J.
Petitioner Leopoldo Cuevas Cardenas challenges the Court of Appeals decision affirming his conviction on two counts of robbery. Prior to trial Cardenas moved to suppress items of evidence allegedly taken in the robbery, arguing that police officers illegally entered and searched a motel room in which he was a guest. The trial court denied the motion and Cardenas was convicted. Cardenas then moved for a new trial based on the prosecutor's failure to disclose the key witness' *129 impending prosecution. The trial court also denied that motion. We hold that the trial court properly denied both the motion to suppress and the motion for a new trial and affirm the Court of Appeals.

FACTS
The facts are taken from the trial court's written findings of fact and undisputed testimony from the suppression hearing.
On December 6, 1998, around 11:15 p.m., the Yakima Police Department received a report of a robbery in progress. Officers Castillo and Stephens each responded separately to the location, arriving at approximately the same time and within minutes of the call.
The officers learned that two men, one "white" and one "Hispanic," had forced their way into an apartment and robbed the two occupants. According to the occupants, the two men had taken jewelry, money, a television, and a videocassette recorder (VCR), along with some clothes, and one of the two men had been armed with either a knife or a gun. They reported that the men had fled only moments earlier in a large vehicle, similar to a Torino, with a different color passenger door, possibly orange.
Information regarding the robbery was broadcast over police radio, along with a warning that the suspects were armed and dangerous. While the officers were still at the apartment they were informed by dispatch that a security guard at the Western Motel had seen a vehicle matching the description of the suspects' car pull into the motel parking lot. Officer Castillo testified that he responded immediately, arriving at the motel within five minutes of the call. When he arrived, Officers Scherschligt and Stephens were standing next to a brown 1970 Pontiac LeMans with a blue door, parked in front of room 8. According to Stephens, the hood of the car was still warm. He noticed some clothing items in the back seat that matched the description of the items taken, including what he thought might be a VCR. Two witnesses who were guests at the motel told police that the occupants of the vehicle had hurriedly entered room 3.
Stephens, Scherschligt, and Castillo approached room 3. All of the officers were in full uniform. Stephens testified that there was a three-inch gap in the curtains. He bent his knees and put his face close to the window to look inside.
Through the gap in the curtains Stephens saw two males, one Hispanic and one white, leaning over a bed sorting through papers, including credit cards. Officer Stephens knocked on the door but did not announce "police." Officer Scherschligt was watching through the gap in the curtains and told Stephens and Castillo that the suspects darted to the back of the room following the knock.
Scherschligt and Stephens ran around the back of the motel where they saw Sergeant George. The back of the motel was fenced and Sergeant George said she had it covered. In addition, the window on the back of the motel room was too small to provide an escape route. Stephens and Scherschligt returned to the front entrance of room 3.
Before the others returned, Officer Castillo had decided to enter the room. Castillo slid the window open, and he drew the curtain aside. He looked in the window and saw both suspects but observed no weapons. Castillo then pointed his gun inside, yelled "get your hands up," and jumped through the window. Clerk's Papers (CP) at 53. The other officers subsequently entered and Cardenas and his codefendant were arrested.

ANALYSIS
A. Procedural Issues
As proponent of the motion to suppress, Cardenas had the burden of establishing that his own Fourth Amendment rights were violated by the challenged search. Rakas v. Illinois, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); accord Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. $277,000.00 U.S. Currency, 941 F.2d 898, 901 (9th Cir.1991); State v. White, 97 Wash.2d 92, 110 n. 9, 640 P.2d 1061 (1982); State v. Murray, 110 Wash.2d 706, 714, 757 P.2d 487 (1988). This burden arises only if the defendant's standing to claim a privacy violation *130 has been challenged. If the issue of standing is not raised to the trial court, it may not be considered on appeal. Tyler Pipe Indus., Inc. v. Dep't of Revenue, 105 Wash.2d 318, 327, 715 P.2d 123 (1986); see also Baker v. Teachers Ins. & Annuities Ass'n College Ret. Equity Funds, 91 Wash.2d 482, 484, 588 P.2d 1164 (1979).
Although the State questioned Cardenas' standing to challenge the search in the Court of Appeals, the State did not raise the issue of standing to the trial court nor did it file an answer or a cross-petition for review in this court. Accordingly, we decline to consider the issue. RAP 13.4(d), 13.7(b). State v. Bobic, 140 Wash.2d 250, 258, 996 P.2d 610 (2000) (citing Tuerk v. Dep't of Licensing, 123 Wash.2d 120, 124, 864 P.2d 1382 (1994)); see also Estate of Jordan v. Hartford Accident & Indem. Co., 120 Wash.2d 490, 496, 844 P.2d 403 (1993) (citing RAP 13.7(b)).
B. Exigent Circumstances
Nonconsensual entry and search of property is governed by the warrant requirements of the Fourth and Fourteenth Amendments. Michigan v. Clifford, 464 U.S. 287, 293, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984); State v. Leach, 113 Wash.2d 735, 738, 782 P.2d 1035 (1989); Staats v. Brown, 139 Wash.2d 757, 991 P.2d 615 (2000). Additionally, Washington Constitution, article I, section 7, provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." A warrantless search is unreasonable as a matter of law unless the State establishes that one of a very narrow set of exceptions applies. Leach, 113 Wash.2d at 738, 782 P.2d 1035. Although ordinarily warrantless entries are presumptively unreasonable, warrant requirements must yield when exigent circumstances demand that police act immediately. Warden Md., Penitentiary v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1645-46, 18 L.Ed.2d 782 (1967); State v. Terrovona, 105 Wash.2d 632, 644, 716 P.2d 295 (1986) (citing Dorman v. United States, 435 F.2d 385, 392-93 (D.C.Cir.1970)).
In this case, Cardenas challenges the trial court's conclusion that exigent circumstances justified the warrantless entry into the motel room in which he was a guest.
This court uses six factors as a guide in determining whether exigent circumstances justify a warrantless entry and search: (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably. Terrovona, 105 Wash.2d at 644, 716 P.2d 295. The trial court considered these factors and found that exigent circumstances justified the officers' entry. The Court of Appeals agreed. Cardenas does not assign error to the trial court's factual findings. Therefore, they are verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
Specifically, the court found: (1) first degree robbery committed with a weapon is a grave offense; (2) the suspects were believed to be armed with either a knife or a gun; (3) the police had trustworthy information that the suspects had committed the crime because the men matched the description given by the victims, the car matched the description, and two witnesses saw two men run from the car in a hurry; (4) the police had strong reason to believe the suspects were inside the room because two witnesses said they saw the men from the car run inside room 3; (5) even though the danger of escape was not great, the officers reasonably believed that it was possible because the suspects darted to the back of the room when the police knocked; and (6) although the entry was not entirely peaceable, the potential for harm was fairly low.
Cardenas argues that the court's findings of fact do not support the trial court's conclusion that a warrantless entry was justified. He points out that Cardenas' vehicle was a 1970 Pontiac LeMans, brown with a blue door. The victims had described the suspect vehicle as brown with possibly an orange door. He further contends that, although there were clothing items that matched the *131 description of those taken in the robbery and possibly a VCR, the contents of the vehicle were unremarkable. Perhaps most importantly, Cardenas argues that the officers' observations of the two persons in the motel room cannot be considered in determining whether exigent circumstances existed because the observations were illegally obtained.
We review the conclusions of law entered in connection with a suppression order de novo. State v. Mendez, 137 Wash.2d 208, 970 P.2d 722 (1999). Even assuming the validity of Cardenas' claims, the trial court's conclusion that exigent circumstances existed is nonetheless correct. Although Cardenas does not take issue with factors (1) and (2), we agree with the trial court's conclusion that a serious felony, armed robbery, had been committed and that the officers had reason to believe the suspects may have been armed. We also agree with the trial court that factor (3) is satisfied. As the trial court noted in his factual findings, officers responded to the robbery scene within minutes of the incident. The victims reported they had just been robbed by two men. They gave a description of the items taken and the suspect vehicle. Shortly after broadcasting that information, police received a call from the Western Motel reporting the arrival of the suspect vehicle. While the vehicle did not have an orange door, it substantially matched the description given by the victims. It was a large, brown American car with a different color passenger door. Officers arrived at the motel within minutes of the report and located the vehicle. Its hood was still warm. The officers testified that the contents of the back seat matched the description of property taken from the victims. Although the items taken in isolation may not have been unusual, their presence under the circumstances permits a reasonable inference that the items were the same ones taken in the earlier robbery. Additionally, two witnesses at the motel had seen two men hurrying from the car into room 3.
Accordingly, we find that the court's conclusion on factor (3) is supported by the court's findings. Similarly, factor (4) is satisfied based on the findings as recited above.
Apart from the officers' observations made through the parted curtain, there is little to support the conclusion that the suspects were likely to escape unless swiftly apprehended. Thus, without the observations made by officers through the curtain opening, factor (5) is doubtful. Nevertheless, it is not necessary that every factor be met to find exigent circumstances, only that the factors are sufficient to show that the officers needed to act quickly. See, e.g., State v. Patterson, 112 Wash.2d 731, 736, 774 P.2d 10 (1989) (no one factor is conclusive; weight varies with circumstances); State v. Flowers, 57 Wash.App. 636, 789 P.2d 333 (1990) (fact that some factors not present is not controlling). Finally, factor (6) is satisfied here. Police were in full uniform and yelled, "get your hands up," placing the occupants on notice that the intruders were law enforcement officers, thus reducing the potential for violence. CP at 53. Additionally, the police did not break down the door but entered through an unlocked window. As the trial court found, the potential for harm was low. Weighing the Terrovona factors, we conclude that exigent circumstances justified the entry in this case, even if we accept Cardenas' claims.
Turning to those claims, however, we first address Cardenas' contention that the officers' observation through the parted window curtains was unlawful. The Court of Appeals applied the "open view" doctrine and found that no search had occurred.
Under the open view doctrine, if an officer detects something by using one or more of his or her senses, while lawfully present at the vantage point where those senses are used, no search has occurred. State v. Rose, 128 Wash.2d 388, 393, 909 P.2d 280 (1996); see also State v. Young, 123 Wash.2d 173, 867 P.2d 593 (1994); State v. Seagull, 95 Wash.2d 898, 901, 632 P.2d 44 (1981). In Seagull, this court found that an officer has the same license to intrude as a reasonably respectful citizen. Seagull, 95 Wash.2d at 902, 632 P.2d 44 (citing United States v. Vilhotti, 323 F.Supp. 425, 431 (S.D.N.Y.), aff'd in part, rev'd in part, 452 F.2d 1186 (2d Cir.1971)); see Rose, 128 Wash.2d at 396, 909 P.2d 280. However, a *132 "particularly intrusive method of viewing, will ... intrude upon a constitutionally protected expectation of privacy." Id. at 903.
Although there is no case directly on point, courts have overwhelmingly found that an attempt to block a view through a window shows a reasonable expectation of privacy. See, e.g., State v. Jordan, 29 Wash.App. 924, 631 P.2d 989 (1981) (by drawing curtains, individuals inside duplex had clearly demonstrated a reasonable expectation of privacy); State v. Morris, 27 Kan.App.2d 155, 999 P.2d 283 (2000) (defendant demonstrated reasonable expectation of privacy by closing blinds); Lorenzana v. Superior Court, 9 Cal.3d 626, 108 Cal.Rptr. 585, 511 P.2d 33 (1973) (petitioner exhibited reasonable expectation of privacy by drawing window shade even with two inch gap between blinds and sill); Pate v. Mun. Court, 11 Cal.App.3d 721, 89 Cal. Rptr. 893 (1970) (defendants exhibited reasonable expectation of privacy drawing motel room window curtains to avoid observations from area open to public).
Similarly, courts have consistently found that a defendant who fails to block the view through a window in some way does not have a reasonable expectation of privacy. See, e.g., Rose, 128 Wash.2d at 393, 909 P.2d 280 (no search when police, lawfully on front porch, looked through unobstructed window next to front door); People v. Superior Court, 264 Cal.App.2d 165, 70 Cal.Rptr. 362 (1968) (officers did not engage in search when they looked through undraped window); State v. Drumhiller, 36 Wash.App. 592, 675 P.2d 631 (1984) (defendants sitting in front of window with drapes open four to six inches wide had no reasonable expectation of privacy); Sayre v. State, 471 N.E.2d 708 (Ind.Ct.App.1984) (defendants did not exhibit reasonable expectation of privacy by leaving curtains open); Commonwealth v. Hernley, 216 Pa.Super. 177, 263 A.2d 904 (1970) (must close curtains to preserve privacy); People v. Hicks, 49 Ill.App.3d 421, 7 Ill.Dec. 279, 364 N.E.2d 440 (1977) (upholding police observations through undrawn curtains); State v. Thompson, 196 Neb. 55, 241 N.W.2d 511 (1976) (upholding observations through sheer curtains); State v. Clark, 124 Idaho 308, 859 P.2d 344 (1993) (use of sheer curtains does not create a legitimate expectation of privacy).
Here, Cardenas was in a motel room in which the curtains were partially closed, leaving a three-inch gap. However, failure to completely close the curtains is not necessarily determinative. See, e.g., Jordan, 29 Wash.App. 924, 631 P.2d 989 (1981) (the fact occupants had not succeeded in completely closing curtains did not diminish the reasonableness of their expectation of privacy); State v. Wooding, 117 N.C.App. 109, 449 S.E.2d 760 (1994) (three to four inch opening in drawn curtains does not eliminate reasonable expectation of privacy); but see State v. Brown, 9 Wash.App. 937, 515 P.2d 1008 (1973) (defendant lost expectation of privacy in motel room when he opened but failed to completely close curtains); United States v. Fields, 113 F.3d 313, 321 (2d Cir.1997) (defendants did not have reasonable expectation of privacy when they left five to six inch gap in blinds).
The circumstances here, including the fact that the officers were required to peer through the opening on bended knees, present a close question. However, in light of our conclusion that exigent circumstances existed without those observations, we need not decide whether the open view doctrine applies to the officers' observations. Rather, we find that the officers' view through the window was justified by officer safety concerns. When exigent circumstances justify a warrantless entry, police officers are not required to proceed at their peril. Police officers are justified in taking reasonable actions to secure their safety when entering a premise under exigent circumstances. See, e.g., Terry v. Ohio, 392 U.S. 1, 23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (unreasonable to expect police officers to take unnecessary risks in performance of duties); Michigan v. Long, 463 U.S. 1032, 1052 n. 16, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (unreasonable to prevent police from taking reasonable steps to protect their safety); City of Seattle v. Hall, 60 Wash.App. 645, 652, 806 P.2d 1246 (1991) (officers may take necessary precautions to protect themselves and others from potentially dangerous situation). Such safety precautions as the officers took here are necessary *133 to ensure that officers are not injured or killed in the course of their entry.
C. Knock and Announce Rule, RCW 10.31.040
In addition to the constitutional prohibitions on warrantless entries, Washington has codified the procedures that officers must follow when entering a premises. Pursuant to RCW 10.31.040, the "knock and announce rule," police officers are required to knock, announce their identity and purpose, and wait a reasonable period to give occupants opportunity to voluntarily admit them before entering premises without permission. The State asserts that the trial court found that Officer Castillo substantially complied with RCW 10.31.040. That is incorrect. The trial court found "[c]learly, under normal circumstances, absent exigent circumstances, the conduct here of the police would not be accepted." CP at 52-53 (Findings of Fact and Conclusions of Law Following Suppression Hearing). We agree. Officer Castillo slid the window open, pushed aside the curtain, pointed his gun inside and yelled, "[g]et your hands up!" CP at 53. He then jumped through the window. He did not give the occupants time to open the door voluntarily. The trial court properly concluded that the officers failed to comply with the provisions of RCW 10.31.040.
The purpose of the knock and announce statute is: (1) to reduce potential violence, which might arise from an unannounced entry, (2) to avoid unnecessary property destruction, and (3) to protect an occupant's right to privacy. State v. Myers, 102 Wash.2d 548, 554, 689 P.2d 38 (1984). Strict compliance with the knock and announce rule is required unless the State can demonstrate that the police had "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). In State v. Richards, 136 Wash.2d 361, 962 P.2d 118 (1998), this court held that compliance with the knock and announce rule is required unless exigent circumstances exist or compliance would be futile. See also State v. Carson, 21 Wash. App. 318, 584 P.2d 990 (1978) (presence or absence of exigent circumstances sufficient to constitute an exception to the knock and wait rule is factual determination to be made by trial court); State v. Young, 76 Wash.2d 212, 217, 455 P.2d 595 (1969); State v. Edwards, 20 Wash.App. 648, 581 P.2d 154 (1978); State v. Woodall 32 Wash.App. 407, 647 P.2d 1051 (1982), rev'd on other grounds, 100 Wash.2d 74, 666 P.2d 364 (1983).
Here the officers reasonably believed that the suspects were armed. They were aware that the suspects had used physical force against the robbery victims, including holding a pair of scissors against one of the victim's throat. Additionally, the officers had observed the suspects rushing toward the back of the motel room following their knock and had reason to think they may be attempting escape. Further, some of the evidence included jewelry, money, and credit cards, which could have been easily disposed of. Finally, the officers entered by first sliding open a window so there was no property destruction. We agree with the trial court that compliance with RCW 10.31.040 was excused under these circumstances.
D. Failure to Disclose Pending Criminal Charge
Cardenas contends that the State's failure to disclose that one of its key witnesses (Ausencio Diaz) had been charged with possession of stolen property denied him the opportunity to impeach the witness. Therefore, he argues, the trial court erred by denying his motion for a mistrial. The grant or denial of a motion for a new trial is within the sound discretion of the trial court and will be reversed only for abuse of that discretion. State v. Copeland, 130 Wash.2d 244, 294, 922 P.2d 1304 (1996). A trial court abuses its discretion when the reason for its decision is manifestly unreasonable or based upon untenable grounds. Davis v. Globe Mach. Mfg. Co., 102 Wash.2d 68, 77, 684 P.2d 692 (1984). Because possession of stolen property is a crime of dishonesty affecting credibility, Cardenas argues that he could *134 have used the information for impeachment thereby possibly changing the outcome of the trial. He correctly observed, that the prosecutor has a duty to disclose any criminal record or prior criminal convictions of state's witnesses. CrR 4.7(a)(1)(vi).
The Court of Appeals found that the State's disclosure duty includes informing the defense of a pending charge against a state witness but that disclosure here would not have changed the outcome of the trial. The court found that other evidence introduced at trial was sufficient to allow the jury to question Diaz's credibility, including the fact that he was on probation and that another witness testified that Diaz sold drugs and often accepted stolen property in exchange for drugs.
Evidence that a witness is on probation is not probative of his credibility. State v. Johnson, 90 Wash.App. 54, 72, 950 P.2d 981 (1998). Further, this court has specifically held that allegations regarding a witness' drug dealings are also not relevant to credibility. See In re Pers. Restraint of Benn, 134 Wash.2d 868, 913, 952 P.2d 116 (1998). Nevertheless, we agree that disclosure here would not have affected the outcome of the trial because the information could not have been used for impeachment purposes as contemplated by Cardenas. Although Cardenas relies on State v. McKinsey, 116 Wash.2d 911, 913-14, 810 P.2d 907 (1991) for authority that the existence of a pending charge is proper impeachment evidence, his reliance is misplaced. McKinsey involved a conviction rather than a pending charge. Moreover, while a conviction is probative of credibility and admissible for impeachment purposes under ER 609(a), a charge is not. Similarly, an arrest without a conviction is usually inadmissible for impeachment under ER 608. The comment to ER 608(b) notes that generally "acts of misconduct not the subject of a prior conviction have not been admissible for impeachment purposes." See ER 608(b) cmt. to (b) at 168. See also 5A Karl B. Tegland, Washington Practice: Evidence Law and Practice §§ 608.6, at 362; 609.3, at 394-95 & n. 1 (4th ed.1999) (noting a mere arrest without conviction is inadmissible for impeachment). Accordingly we find the trial court did not abuse its discretion in denying a new trial.

CONCLUSION
We hold that the trial court properly concluded that exigent circumstances excused the warrantless entry in this case. Likewise, we hold that the officers' observations through the motel room window were justified because of concerns for officer safety. We hold that due to the danger of potential violence and destruction of evidence, the officers were not required to knock and announce before entry. Finally, we hold that the trial court did not abuse its discretion in denying the motion for a new trial because the evidence of the pending criminal charge would not have been admissible.
SMITH, IRELAND, BRIDGE and OWENS, JJ., concur.
ALEXANDER, C.J. (dissenting).
The majority holds that the trial court did not err in concluding (1) that exigent circumstances justified a warrantless entry by Yakima police officers into Leopold Cardenas' motel room, and (2) that these circumstances excused the officers' failure to comply with Washington's knock and announce statute. In reaching that decision, it holds that it makes no difference whether the observations the officers made through a slight gap in the closed curtains of Cardenas' motel room window were properly considered by the trial court as support for its conclusion that there were exigent circumstances. I disagree. In my view, absent the evidence of the observations into the interior of the motel room, there was insufficient evidence to support the trial court's finding of exigent circumstances. Because I believe that the trial court erred in concluding that the observations made through the gap in the motel room window curtains were lawfully made, I would reverse the Court of Appeals' decision that affirmed the trial court and hold that any evidence seized from within the motel room should not have been admitted into evidence. Because the majority concludes otherwise, I dissent.
*135 In reaching its conclusion that the trial court did not err in relying upon the observations that Yakima police officers made through a narrow gap between the drawn curtains of Cardenas' motel room window, the majority observes that "courts have consistently found that a defendant who fails to block the view through a window in some way does not have a reasonable expectation of privacy." Majority at 132. Although I agree with that general statement of law, I cannot subscribe to the conclusion that the majority reaches under these facts because, in my view, the open view doctrine has no application in a case such as this where the police officers made their observations from an unnatural vantage point. In that regard, I find our decision in State v. Rose, 128 Wash.2d 388, 909 P.2d 280 (1996), particularly instructive. There, we concluded that observations by a police officer fell under the open view doctrine because the officer peered through an unobstructed window from a natural vantage point. We went on to say that the search was justified because the officer looked "directly through the window without leaning, bending, or straining the body ... [and because the officer did not have to] maneuver his body in any way to see through the window." Rose, 128 Wash.2d at 396, 909 P.2d 280 (emphasis added). Here, we are confronted with a much different situation, the record showing that the police officers had to get down on their knees and press their faces near to the lower portion of the motel room window in order to peer through a two- to three-inch gap at the foot of closed curtains. It was from this unnatural position, which can only be described as an artificial vantage point, that the officers were able to see within the room.[1]
It is significant that Cardenas and his codefendant had closed the curtains to the motel room save for the slight gap at the windowsill level. Although the majority acknowledges that "courts have overwhelmingly found that an attempt to block a view through a window shows a reasonable expectation of privacy," it cites to a number of cases which hold that a suspect's privacy expectation is lowered when he or she fails to completely block the view through a window. Majority at 132. The cases relied upon by the majority are, however, distinguishable. Notably, only three of those cases involved a draped window. See State v. Drumhiller, 36 Wash.App. 592, 675 P.2d 631, review denied, 101 Wash.2d 1012 (1984); State v. Clark, 124 Idaho 308, 859 P.2d 344 (1993); State v. Thompson, 196 Neb. 55, 241 N.W.2d 511 (1976). In two of those cases, Clark and Thompson, the courts addressed the lack of privacy expectation of an individual who had drawn transparent curtains. In the third case, Drumhiller, the court did conclude that an expectation of privacy was lacking because the curtains were not completely closed. The opening there, however, was four to six feet wide over the entire length of the curtainsnot a few inches in width at the windowsill level as is the case here.
Although it is difficult to compare the privacy expectations of the defendants in the aforementioned cases to Cardenas' expectation, it seems to me that none of those cases undermine the general principle that one has an expectation of privacy when he or she closes the curtains to the room in which they are located. To say that this expectation disappears or is lowered because a slight gap exists at the bottom of closed curtains, thus enabling persons who have assumed an unnatural position outside the window to peer within the curtained room, is to unduly diminish the general rule. The significant fact is that when Cardenas and/or his codefendant closed the curtains in a manner that would prevent a person in a natural position from seeing within the room, they evinced a desire for privacy. Accordingly, I would hold that the observations made by the police officers through the gap in the motel room curtains constituted an impermissible search.
*136 The next question becomes this: in the absence of the observations made through the small gap in the curtains is there sufficient evidence to support a conclusion that exigent circumstances justified the officers' warrantless entry in the motel and their failure to comply with the knock and announce statute, RCW 10.31.040?
Citing State v. Terrovona, 105 Wash.2d 632, 644, 716 P.2d 295 (1986), the majority correctly states that this court uses the factors set forth in Dorman v. United States, 435 F.2d 385, 392-93 (D.C.Cir.1970), as a guide in determining whether exigent circumstances excuse a warrantless entry and search.[2] Majority at 130. Unfortunately the majority's analysis of those factors fails to recognize why the factors are employed. I agree with the Court of Appeals that "[t]he rationale underlying the exigent circumstances exception is to permit a warrantless search where the circumstances are such that obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence." State v. Audley, 77 Wash.App. 897, 907, 894 P.2d 1359 (1995). Indeed, this is the reason that the Dorman court stressed a weighing of the aforementioned factors against the urgency of the need of the police to enter without a warrant. See Dorman, 435 F.2d at 394. Accordingly, this court finds an exigency only "`when there is an immediate need to continue a promising criminal investigation.'" State v. Patterson, 112 Wash.2d 731, 736, 774 P.2d 10 (1989) (emphasis added) (quoting McCary v. Commonwealth, 228 Va. 219, 228, 321 S.E.2d 637, 642 (1984)).
In my view, the record does not establish need by the Yakima police to gain immediate entry into Cardenas' motel room. Although, as the majority notes, the police officers had strong reason to believe that robbery suspects were in the motel room, it was not at all likely that the suspects could escape before the police officers could obtain a warrant. That is so because the police officers had secured the only entrance to Cardenas' motel room.[3] Indeed, the majority concedes that "there is little to support the conclusion that the suspects were likely to escape unless swiftly apprehended." Majority at 131.
Neither were the officers compelled to enter swiftly in order to prevent possible destruction of evidence. It is significant in that regard that one of the police officers had observed some clothing items and a VCR in the back seat of the suspects' vehicle, which was parked in the motel parking lot. These items matched the description of items allegedly taken from the reported robbery. Because Cardenas and his codefendant were inside the motel room, it was not possible for them to destroy this evidence without the officers' knowledge.
Similarly, although the majority concludes otherwise, the gravity of the offense and the fact that police officers reasonably believed that Cardenas and his codefendant were armed does not support a conclusion that an emergency justified warrantless entry by the police officers into the motel room. Generally, the reason that courts weigh these factors when determining whether exigent circumstances exist is to avoid an "increase[d] danger to the community ... or to the officers at time of arrest." Dorman, 435 F.2d at 392. Because Cardenas and his codefendant could not escape from the motel room it is clear that they posed little danger to the safety of the public. Regarding police safety, I fail to see how immediate entry into the room was any less dangerous than a later entry with a warrant.
In the final analysis, we must remember that the entry into the motel room was made *137 without the benefit of a warrant. Warrantless searches are per se unreasonable absent a showing by the State that one of the few narrow exceptions to the warrant requirement pertains. State v. Leach, 113 Wash.2d 735, 738, 782 P.2d 1035 (1989). In my judgment, it cannot be said here that the inherent delay in securing a warrant would facilitate escape, increase the likelihood that the evidence would be destroyed or jeopardize safety of the public or police officers. That being the case, entry without a warrant was not justified under the guise of exigent circumstances.
I would, therefore, hold that the Court of Appeals and the trial court incorrectly determined that exigent circumstances justified the officers' warrantless entry into Cardenas' motel room and excused the officers' failure to comply with the knock and announce statute. Accordingly, the trial court should not have admitted evidence seized from within the motel room. Because the majority concludes otherwise and affirms the decision of the trial court, I respectfully dissent.
SANDERS, JOHNSON and CHAMBERS, JJ., concur.
NOTES
[1] The record indicates that the fabric of each window curtain was pulled tight leaving only a triangular shaped two- to three-inch gap at the bottom of the windowsill. The record also indicates that the bottom of the windowsill was approximately two and a half feet off of the ground. In order to see inside, one of the officers testified that "I had my face right up right up to it. I wasn't touching it but probably as close as I could without touching it." Verbatim Report of Proceedings (May 10, 1999) at 21.
[2] Dorman enumerated six factors to aid in determining when a warrantless police entry is justified: (1) the gravity of the offense; (2) the suspect is reasonably believed to be armed; (3) there is trustworthy information that the suspect is guilty; (4) there is strong reason to believe that suspect is on premises; (5) the suspect is likely to escape if not swiftly apprehended; and (6) the entry is made peaceably. See Dorman, 435 F.2d at 392-93.
[3] The record reveals that in addition to the officer stationed at the entrance to Cardenas' motel room an officer was stationed at the rear of the motel unit. This precaution was taken even though the rear of the premises was surrounded by a barbed wire fence and there was no rear exit from Cardenas' room. Immediately prior to the officers' entry into Cardenas' motel room, two officers were in transit from the back of the motel to the front entrance of Cardenas' room.