153 P.3d 199 (2007)
STATE of Washington, Respondent,
v.
Brent Richard SMITH, Appellant.
No. 23986-1-III.
Court of Appeals of Washington, Division 3.
February 13, 2007.
*201 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
Alexander Carl Ekstrom, Heather Dawn Czebotar, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.

PUBLISHED OPINION
KULIK, J.
¶ 1 Brent Smith was convicted of manufacturing methamphetamine based in part on evidence from the warrantless search of a house. Law enforcement searched this house after they found two 1,000 gallon tanks of anhydrous ammonia near the house and after a gun case observed through the window of the house disappeared. Mr. Smith challenges the admission of evidence that was obtained as a result of this search. We hold that the search of the house was within the protective sweep, exigent circumstances, and community caretaking exceptions to the warrant requirement. We affirm the conviction.

FACTS
¶ 2 Patrol Sergeant Rick Welch received an anonymous tip that a stolen semi truck filled with anhydrous ammonia was located at a specific address in Benton County. This vehicle was stolen from the Spokane area, where both police and the Federal Bureau of Investigation were attempting to locate it. The semi contained two 1,000 gallon tanks that were filled with anhydrous ammonia.
¶ 3 When Sergeant Welch arrived at the address, he could see a semi truck partially concealed by a chain link fence. He verified that this truck was the stolen truck. Sergeant Welch radioed the Tri-Cities drug task force and fire department, and the Washington State Patrol for assistance.
¶ 4 Sergeant Welch testified that he required extensive police back-up because of the volatile nature of anhydrous ammonia. When liquid anhydrous ammonia comes into contact with air, it turns into a gas that can be fatal if inhaled. Another officer testified that they typically find anhydrous ammonia in much smaller amounts, normally between 5 and 20 gallons. Several houses were located nearby. The officers were concerned that the stolen tanks may have been altered and could be leaking anhydrous ammonia. And the tanks presented a danger of explosion due to internal pressure from the evaporating anhydrous ammonia.
¶ 5 Before checking the anhydrous ammonia tanks, police attempted to secure the home and surrounding outbuildings that were near the truck. The primary purpose of this check was officer safety. Sergeant Welch knocked and announced his presence at the house, but no one responded. Two individuals were seen in an upstairs window and a dog was barking inside the house. Police also observed a gun case through one of the windows.
¶ 6 Some time later, a man and woman came out of the house. The man was later identified as Mr. Smith. The gun case that had been near the window was gone. Police were uncertain as to whether there were additional people inside the house. Based on these facts, police did a protective sweep of the house to check for the gun and any other persons who may have been inside.
¶ 7 Police smelled a strong chemical odor immediately upon entering the home. As *202 they were searching, they found the gun case they had seen in the window in a crawl space. Law enforcement secured the residence and obtained a search warrant. Later, police opened what appeared to be a footlocker in the bathroom and found a portable methamphetamine lab.
¶ 8 Mr. Smith was charged with manufacture of methamphetamine.
¶ 9 Mr. Smith made a motion under CrR 3.6 to exclude any evidence obtained during the warrantless search of his residence. The trial court entered findings of fact and conclusions of law denying the motion. The court concluded that the officers' sweep of the home fell within the emergency exception to the warrant requirement.
¶ 10 The jury found Mr. Smith guilty of the crime of manufacturing methamphetamine.

ANALYSIS
Did the trial court err by admitting evidence obtained during the search of Mr. Smith's house?
¶ 11 The fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution generally prohibit warrantless searches. See, e.g., State v. Ladson, 138 Wash.2d 343, 348-49, 979 P.2d 833 (1999). This general prohibition, however, is subject to several narrowly drawn exceptions. Id. at 349, 979 P.2d 833. The burden is on the State to prove the exception. Id. at 350, 979 P.2d 833. Here, the State asserts that the search was valid because of the protective sweep, exigent circumstances, and community caretaking exceptions to the prohibition against warrantless searches.
Protective sweep exception
¶ 12 Police may make a protective sweep of the premises for security purposes as part of the lawful arrest of a suspect. State v. Hopkins, 113 Wash.App. 954, 959, 55 P.3d 691 (2002). But the scope of the sweep is limited to a visual inspection of only those places where a person may be hiding. Id. In addition, a general desire to make sure that there are no other individuals present alone is not sufficient to justify a protective sweep. Id. at 960, 55 P.3d 691.
¶ 13 Here, police were responding to theft of a large amount of anhydrous ammonia. They did not know if individuals were present in the home or adjacent buildings. They observed a gun case through one of the windows in the home. While no one answered the knock on the door, 10 minutes later Mr. Smith and his companion came out of the house. And the gun case was gone from near the window.
¶ 14 Then police searched the house but only areas that could have concealed a person. They limited their search to a visual inspection of those areas. The search was within the protective sweep exception to the warrant requirement.
Exigent circumstances exception
¶ 15 Exigent circumstances are also an exception to the warrant requirement. State v. Morgavi, 58 Wash.App. 733, 736, 794 P.2d 1289 (1990). Exigent circumstances may include those that present a threat to officer safety. State v. Jeter, 30 Wash.App. 360, 362, 634 P.2d 312 (1981).
¶ 16 This court looks to six factors in determining whether exigent circumstances justify a warrantless entry and search: (1) the seriousness or violence of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) whether there is strong reason to believe that the suspect is on the premises; (5) the likelihood that the suspect will escape if not swiftly apprehended; and (6) whether the entry was made peaceably. State v. Cardenas, 146 Wash.2d 400, 406, 47 P.3d 127 (2002). Each of the six factors need not be present in every case. Id. at 408, 47 P.3d 127. All that must be shown is that, in light of these factors, officers needed to react quickly to the situation. Id.
¶ 17 In order to find that exigent circumstances exist, this court must also be satisfied that the asserted emergency was not merely a pretext for the search and that *203 the search was "actually motivated by a perceived need to render aid or assistance." State v. Loewen, 97 Wash.2d 562, 568, 647 P.2d 489 (1982). This inquiry involves a determination of both the subjective and objective reasonableness of the belief that an emergency existed. Morgavi, 58 Wash.App. at 736, 794 P.2d 1289.
¶ 18 One of the recognized situations in which a warrantless search may be justified under the exigency exception is where police reasonably believe that persons are in danger of imminent death or harm, or where there are objects present that are likely to burn or explode. State v. Muir, 67 Wash. App. 149, 153, 835 P.2d 1049 (1992).
¶ 19 Here, there is little likelihood that the asserted emergency was merely a pretext. Unlike the cases cited by Mr. Smith, law enforcement was not on the premises searching for a particular suspect. From the beginning, police were responding to an emergency. A potentially lethal chemical was present in large amounts near residences. The tankers held approximately 2,000 gallons of anhydrous ammonia, an amount significantly greater than the amount typically found in the manufacture of methamphetamine. And there was also a danger of the tanker exploding.
¶ 20 The search for suspects was secondary to the need to secure the tanker. While police were concerned for their own safety in light of the gun case they observed, they were also concerned that a person might discharge the weapon at the tank, causing a dangerous chemical spill. Under the facts here, police were acting under exigent circumstances. A swift response was appropriate to protect the officers and the community.
Community caretaking exception
¶ 21 Another exception to the warrant requirement that may arise when police confront emergency situations is the community caretaking exception. State v. Schroeder, 109 Wash.App. 30, 37, 32 P.3d 1022 (2001). This exception may apply if (1) the law enforcement officer subjectively believed that an individual or individuals needed assistance for health or safety reasons; (2) a reasonable person in the same or a similar situation would also believe that there was a need for assistance; and (3) that there was a reasonable basis to associate the need for assistance with the place to be searched. Id. at 38, 32 P.3d 1022. As with the exigent circumstances exception, this court must also be satisfied that the claimed emergency was not merely a pretext for a search for evidence. Id.
¶ 22 As previously noted, police were responding to a dangerous situation that posed a threat to the health and safety of the community. Testimony showed that inhaling anhydrous ammonia could be lethal and that a large amount of anhydrous ammonia was present immediately next to the home that was searched. Police were uncertain as to how many individuals were present at this location. They observed a gun case in the home that was no longer visible after Mr. Smith and his companion left. Given the volatile nature of anhydrous ammonia, the presence of nearby homes, and the possibility that a firearm might puncture the anhydrous ammonia tanks, it was subjectively and objectively reasonable for the officers to enter the home and conduct a limited search to secure the weapon and any individuals who were present within the home.
¶ 23 We affirm the conviction.
WE CONCUR: SWEENEY, C.J., and KATO, J. Pro Tem.