199 P.3d 386 (2009)
STATE of Washington, Respondent,
v.
Brent Richard SMITH, Petitioner.
No. 79917-2.
Supreme Court of Washington, En Banc.
Argued May 15, 2008.
Decided January 22, 2009.
*387 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Petitioner.
Heather Dawn Kintzley, Andrew K. Miller, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
Nancy Lynn Talner, Attorney at Law, Seattle, WA, Amicus Curiae on behalf of American Civil Liberties.
Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, Amicus Curiae on behalf of Washington Association of Criminal Defense Lawyers.
OWENS, J.
¶ 1 A jury convicted petitioner Brent Richard Smith of methamphetamine manufacture based on evidence gathered in a warrantless search of the abandoned house he occupied. The issue here is whether the facts of the case support an exception to the search warrant requirement.
¶ 2 After a suppression hearing, the trial court concluded that the search fell under the "emergency" exception to the warrant requirement and admitted the evidence. The Court of Appeals, Division Three, affirmed, stating that the "exigent circumstances," "protective sweep," and "community caretaking" exceptions all applied. State v. Smith, 137 Wash.App. 262, 265-66, 153 P.3d 199 (2007), review granted, 162 Wash.2d 1023, 179 P.3d 839 (2008). We now affirm the Court of Appeals with different reasoning and affirm the conviction.

FACTS
¶ 3 The Tri-City Metro Drug Task Force (Task Force) received information from the Federal Bureau of Investigation (FBI) that a tanker truck containing 1,000 gallons of anhydrous ammonia had been stolen from Sprague, Washington. "Anhydrous amonia [sic] is extremely toxic. It is one of the most potential[ly] dangerous chemicals used in agriculture. It can cause severe chemical burns in victims exposed to it in small amounts. [Exposure] [r]equires immediate treatment to minimize damage." Verbatim Report of Proceedings (VRP) (Dec. 17, 2004) at 15 (testimony of Detective Horacio Gonzales); Clerk's Papers (CP) at 89. The Task *388 Force received an anonymous tip that the stolen tanker truck was located at 203212 East State Route 397, Kennewick, Benton County.
¶ 4 The Task Force, the Washington State Patrol, the Benton County Sheriff's Office, and the Benton County Fire Department responded to the tip and converged on the location. The property consists of a fenced acre of land containing a two-story house, a shed, and several junk cars. The tanker truck was located fewer than 75 feet from the house. According to the anonymous tip, the house was vacant.
¶ 5 Detective Gonzales of the Task Force was familiar with the property, having previously responded to the property for methamphetamine-related incidents. Detective Gonzales and Detective Clem made the initial entry onto the property to secure the truck against the risk of leaking anhydrous ammonia. This initial entry was warrantless.[1] Both officers wore protective gear. They secured the truck and verified it was not leaking.
¶ 6 While the tanker was being secured, 10 other officers surrounded the house, knocked on the door, and announced their presence. While securing the house one officer saw through a window "what appeared to be a rifle ... located in the living room area of the first floor next to a mattress." CP at 87. The officers also saw in the yard between the truck and the house "a propane tank with a modified and discolored valve, which Detective Gonzalez [sic] recognized by training and experience to be consistent with the storage of anhydrous ammonia." CP at 88; VRP (Dec. 17, 2004) at 21.
¶ 7 Approximately 10 minutes after the officers announced their presence, Smith and Kimberly Yvonne Breuer exited the house. They told the officers they found the house open a few days prior and had been staying there since then.[2] They told the officers they were aware of the truck but unaware of its contents. The officers handcuffed and detained Smith and Breuer.
¶ 8 Looking into the open door the officers noticed that the apparent rifle was no longer where they had previously seen it. The officers asked Smith and Breuer if there was anyone else in the house. They responded that no one else was there.
¶ 9 Detectives Gonzales, Gregory, Brazeau, and Cole entered the house to perform a "safety sweep." VRP (Dec. 17, 2004) at 24. They searched in places where a person could be hiding, but did not look in other spaces, such as drawers. During this search, the officers seized a 16-gauge shotgun from a second floor crawl space. The officers also noticed items consistent with the manufacture of methamphetamine. No one was inside the house.
¶ 10 The officers later got a warrant based on the information gathered from the first search of the house. The search of the house pursuant to the warrant revealed a methamphetamine laboratory.
¶ 11 On November 23, 2004, the State charged Smith with one count of manufacture of a controlled substance, methamphetamine. Smith moved to suppress the evidence obtained during the warrantless search of the house. The trial court denied Smith's motion following a suppression hearing.
¶ 12 On February 18, 2005, a jury found Smith guilty. Smith appealed. The Court of Appeals affirmed Smith's conviction, holding the warrantless search of the house was justified under three exceptions to the warrant requirement: "community caretaking," "protective sweep," and "exigent circumstances." Smith, 137 Wash.App. at 265-66, 153 P.3d 199. We granted review.

STANDARD OF REVIEW
¶ 13 "Unchallenged findings of fact entered following a suppression hearing are verities on appeal." State v. Gaines, 154 Wash.2d 711, 716, 116 P.3d 993 (2005). Neither *389 party assigns error to the findings of fact, so we take them to be true. "We review a trial court's conclusions of law in an order pertaining to suppression of evidence de novo." State v. Carneh, 153 Wash.2d 274, 281, 103 P.3d 743 (2004).

ANALYSIS
¶ 14 The United States and Washington Constitutions prohibit most warrantless searches of homes.[3] However, the police may search without a warrant under one of the "`few jealously and carefully drawn exceptions to the warrant requirement.'" State v. Kinzy, 141 Wash.2d 373, 384, 5 P.3d 668 (2000) (quoting State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980)). The State bears the burden of proving that the warrantless search fits within one of these closely guarded exceptions. Kinzy, 141 Wash.2d at 384, 5 P.3d 668. The police may not use an exception as pretext for an evidentiary search. State v. Ladson, 138 Wash.2d 343, 356, 979 P.2d 833 (1999).

Exigent Circumstances
¶ 15 Under one recognized exception, police may search without a warrant when "exigent circumstances" justify the search. State v. Cardenas, 146 Wash.2d 400, 405, 47 P.3d 127, 57 P.3d 1156 (2002). The rationale behind the exigent circumstances exception "is to permit a warrantless search where the circumstances are such that obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence." State v. Audley, 77 Wash.App. 897, 907, 894 P.2d 1359 (1995), quoted in Cardenas, 146 Wash.2d at 417, 47 P.3d 127 (Alexander, C.J., dissenting). Washington courts have long held that "danger to [the] arresting officer or to the public" can constitute an exigent circumstance. State v. Counts, 99 Wash.2d 54, 60, 659 P.2d 1087 (1983).
¶ 16 We determine whether an exigent circumstance existed by looking at the totality of the situation in which the circumstance arose. State v. Carter, 151 Wash.2d 118, 128, 85 P.3d 887 (2004). We have set out six factors to guide this analysis:
(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry [can be] made peaceably.
Cardenas, 146 Wash.2d at 406, 47 P.3d 127 (citing State v. Terrovona, 105 Wash.2d 632, 644, 716 P.2d 295 (1986)). Because we analyze the totality of the situation, circumstances may be "exigent" even if they do not satisfy every one of the six listed elements. Id. at 408, 47 P.3d 127.
¶ 17 Under the extraordinary facts of this case, the responding officers identified a legitimate threat to officer and public safety sufficient to constitute an exigent circumstance. Upon arriving at the property, they found a stolen tanker truck parked next to the house, pressure filled with 1,000 gallons of an extremely dangerous chemical. Presumably, someone hiding in the house had stolen the tanker, in a criminal act serious enough to warrant FBI involvement. The officers saw a firearm through the window of the house. By the time Smith and Breuer had emerged from the house, the firearm had disappeared, and Smith and Breuer did not have it.
¶ 18 The trial court made a finding of fact that Detective Gonzales was concerned that a *390 person with the missing gun inside the house would shoot the pressurized tank of anhydrous ammonia, causing a grave health risk for all those in the vicinity. He was also concerned that a person hiding in the house would shoot directly at the officers.
¶ 19 There was no pretext here. The officers' actions were consistent with their stated purpose of preventing the risks to themselves and the public. They looked only in spaces where a person could hide, and they confiscated only the missing gun.
¶ 20 Under the unusual facts presented here, most notably the combination of large quantities of a toxic chemical and the missing firearm, the officers' search falls under the "officer and public safety" prong of the "exigent circumstances" exception to the warrant requirement. The trial court was correct in refusing to suppress the evidence gained in connection with the search.

Other Warrant Exceptions
¶ 21 In its discussion of exigent circumstances, the Court of Appeals quoted and applied standards related to the "emergency" exception to the warrant requirement. Smith, 137 Wash.App. at 269, 153 P.3d 199. While some older Washington cases treat "emergency aid" as a subset of the "exigent circumstances" exception, see State v. Loewen, 97 Wash.2d 562, 568, 647 P.2d 489 (1982), the more recent cases analyze it under the separate "community caretaking" category, as the United States Supreme Court has always done, see Kinzy, 141 Wash.2d at 387, 5 P.3d 668; Cady v. Dombrowski, 413 U.S. 433, 441-42, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).
¶ 22 Because we hold that the evidence was properly admitted under the "officer and public safety" subset of the exigent circumstances exception, we need not address whether the "community caretaking" and "protective sweep" exceptions apply.

CONCLUSION
¶ 23 We hold that the officers were properly acting under the exigent circumstances exception when they entered the house. As such, the evidence obtained in connection with that search was admissible. We affirm the Court of Appeals decision with different reasoning, and we affirm Smith's conviction.
WE CONCUR: C. JOHNSON, MADSEN, CHAMBERS, FAIRHURST and STEPHENS, JJ.
SANDERS, J. (dissenting).
¶ 24 The Fourth Amendment to the United States Constitution and the Washington Declaration of Rights require the police to obtain a warrant before conducting a search of a home, subject to limited exceptions.[1] A warrantless search is impermissible under both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution unless one of the "`few jealously and carefully drawn exceptions to the warrant requirement'" applies, which the State has the burden of proving. State v. Kinzy, 141 Wash.2d 373, 384, 5 P.3d 668 (2000) (quoting State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980)). "Both the Fourth Amendment and article I, section 7 provide strict privacy protections where invasion of a person's home is involved." City of Pasco v. Shaw, 161 Wash.2d 450, 459, 166 P.3d 1157 (2007). Here, the police searched Brent Smith's home without a warrant. The majority asserts this warrantless search was justified "under the `officer and public safety' prong of the `exigent circumstances' exception to the warrant requirement." Majority at 390. I disagree. The warrantless entry into Smith's home violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution because no exception applied.
¶ 25 Exigent circumstances exist to excuse the warrant requirement if the demand for immediate investigatory action makes it impracticable *391 for the police to obtain a warrant. State v. Cardenas, 146 Wash.2d 400, 405-08, 47 P.3d 127 (2002). To determine if exigent circumstances exist for a warrantless entry, the court looks to six factors for guidance: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is reasonably trustworthy information of the suspect's guilt, (4) whether there is a strong reason to believe the suspect is on the premises, (5) whether the suspect is likely to escape if not apprehended, and (6) whether the entry is made peaceably.[2]Id. at 406, 47 P.3d 127 (citing State v. Terrovona, 105 Wash.2d 632, 644, 716 P.2d 295 (1986)). While the majority is correct that every single factor need not be present to establish exigency, in the aggregate, the factors must establish the need to act quickly. Majority at 389; State v. Patterson, 112 Wash.2d 731, 736, 774 P.2d 10 (1989).
¶ 26 The majority asserts, "Under the extraordinary facts of this case, the responding officers identified a legitimate threat to officer and public safety sufficient to constitute an exigent circumstance." Majority at 389. While the facts of this case may not be ordinary they did not give the police carte blanche to violate Smith's constitutional rights. The majority asserts the following facts establish exigency: (1) a stolen tanker containing 1,000 gallons of anhydrous ammonia parked next to a believed-to-be vacant home, (2) the presence of Smith and Kimberly Breuer inside the home, and (3) an unaccounted for shotgun. Id.
¶ 27 Under the six factor analysis, however, these facts do not establish sufficient exigency to justify a warrantless intrusion into Smith's home. The theft of a truck containing 1,000 gallons of anhydrous ammonia is not a violent crime. It may be a serious offense, but exigency is not created merely because a serious offense has been committed. Counts, 99 Wash.2d at 59-60, 659 P.2d 1087. The truck was secured by officers who verified it was not leaking. Clerk's Papers (CP) at 87; Verbatim Report of Proceedings (RP) (Dec. 17, 2004) at 19-20. Shortly after securing the truck Smith and Breuer were detained by police. CP at 88. While there may have been an unaccounted for shotgun in the home, there was no reason to believe there was anyone else in the home or on the premises to use the weapon. The entry by police may very well have been peaceful, but with at least 15 officers on the scene there was no reason to believe the fictitious person would escape. There was no apparent urgency to justify the warrantless entry, and there was ample time to obtain a warrant.
¶ 28 The "officer and public safety" prong of the "exigent circumstances" exception to the warrant requirement does not apply here because there was no threat to officer or public safety inside the home. The only possible threat was outside the home and that threat had been contained when the tanker truck was secured and Smith and Breuer were detained. There was no exigency requiring the officers' immediate entry into Smith's home without a warrant.
¶ 29 The community caretaking exception also does not justify the warrantless search of Smith's home. Under the Fourth Amendment to the United States Constitution, "[t]his [community caretaking] exception allows for the limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance or when making routine checks on health and safety." State v. Thompson, 151 Wash.2d 793, 802, 92 P.3d 228 (2004).[3]

*392 Such invasion is allowed only if (1) the police officer subjectively believed that someone likely needed assistance for health or safety concerns, (2) a reasonable person in the same situation would similarly believe that there was need for assistance, and (3) there was a reasonable basis to associate the need for assistance with the place being searched.
Id. (citing Kinzy, 141 Wash.2d at 386-87, 5 P.3d 668).
¶ 30 Two factors must be present to justify a warrantless entry under the "community caretaking" exception: "there must be a substantial risk of serious injury to persons or property" and "the risk to persons or property must be imminent." State v. Leffler, 142 Wash.App. 175, 183-84, 178 P.3d 1042 (2007). Moreover, the police officers must be motivated by "`noncriminal noninvestigatory purposes.'" Thompson, 151 Wash.2d at 802, 92 P.3d 228 (quoting Kalmas v. Wagner, 133 Wash.2d 210, 216-17, 943 P.2d 1369 (1997)). In other words, the entry is permissible to render immediate assistance but not to investigate.
¶ 31 Here, the police were investigating the theft of the tanker truck. The police had no indication of other people in the home. The police had no reason to believe there was an imminent threat of substantial harm. The presence of the tanker truck raises the possibility of harm, but the possibility of harm cannot justify a warrantless entry under the "community caretaking" exception. There was no one who needed immediate assistance. The police entered the home to investigate an apparent missing shotgun previously seen through a window in the home, not to render immediate assistance to anyone.
¶ 32 Nor does the protective sweep protection apply here even though the Court of Appeals found this exception applicable. State v. Smith, 137 Wash.App. 262, 268, 153 P.3d 199 (2007). The State, however, conceded in its brief below that the "protective sweep" exception was inapplicable because the search of the home was not incident to an arrest. Br. of Resp't. at 12; see also State v. Hopkins, 113 Wash.App. 954, 55 P.3d 691 (2002).
¶ 33 The court must also be satisfied that the invocation of exigency is not simply a pretext for conducting an impermissible search. State v. Ladson, 138 Wash.2d 343, 356, 979 P.2d 833 (1999). The police may not invoke an exception as pretext to an evidentiary search. Id.; State v. Lawson, 135 Wash.App. 430, 435-36, 144 P.3d 377 (2006). The majority asserts, "[t]here was no pretext here" because "[t]he officers' actions were consistent with their stated purpose of preventing the risks to themselves and the public." Majority at 390. However, Detective Gonzales of the TriCity Metro Drug Task Force was familiar with the property, having previously responded to it for methamphetamine related incidents. CP at 86; RP (Jan. 21, 2005) at 16. Additionally detectives entered the home without wearing any protective gear or safety equipment. RP (Jan. 21, 2005) at 31. If their actions were consistent with their purpose of preventing harm to themselves and the public, then one would imagine that at the very least they would wear protective gear before entering the home. Furthermore, the risk was outside the home, not inside, so there was no reason for the officers and detectives to enter the home.
¶ 34 In sum, the police had no urgent need to enter Smith's home. In any situation, the police may never be truly sure a house is empty until they search it. Yet, the majority wants to allow police to search a house just to ensure it is not empty. This is not a permissible exception to the warrant requirement. Permitting a warrantless intrusion into a house because of something outside the home swallows the warrant requirement in many situations.[4] The police had no reason to believe a dangerous suspect was inside the house. Hopkins, 113 Wash.App. at 959-60, 55 P.3d 691 (requiring articulable facts to support the belief of the presence of a dangerous person nearby); see also Terrovona, 105 Wash.2d at 644-45, 716 P.2d 295; Cardenas, 146 Wash.2d at 406-08, 47 P.3d 127. A *393 shotgun was inside the house and a secured tanker truck of anhydrous ammonia was outside the home, but this alone does not justify a warrantless entry. See U.S. CONST. amend. II; WASH. CONST. art. I, § 24.
¶ 35 "`When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed.'" Kinzy, 141 Wash.2d at 393, 5 P.3d 668 (quoting Ladson, 138 Wash.2d at 359, 979 P.2d 833). Here, evidence of the methamphetamine lab was discovered only after the police warrantlessly entered the house. This warrantless entry was unconstitutional, so the subsequently discovered methamphetamine lab became "fruit of the poisonous tree" and should have been suppressed.
¶ 36 I dissent.
WE CONCUR: ALEXANDER, C.J. and J. JOHNSON, J.
NOTES
[1] Smith does not challenge the legality of this warrantless search and seizure.
[2] The State does not challenge Smith's expectation of privacy in this house. See State v. Francisco, 107 Wash.App. 247, 253, 26 P.3d 1008 (2001) ("Persons may challenge searches of the premises they occupy even though they are not parties to the legal arrangements concerning the possessory interest.").
[3] U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); WASH. CONST. art. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."). Smith does not argue that article I, section 7 provides more protection than the Fourth Amendment in this case. When a party merely invokes article I, section 7 but does not provide analysis on the issue of whether under the circumstances article I, section 7 provides greater protection, this court will not address the issue. State v. Kinzy, 141 Wash.2d 373, 384 n. 33, 5 P.3d 668 (2000) (citing State v. Hill, 123 Wash.2d 641, 648, 870 P.2d 313 (1994)).
[1] U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); CONST. ART. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law.").
[2] These six factors supplement the five factual scenarios where exigent circumstances could be present: (1) hot pursuit, (2) fleeing suspect, (3) danger to arresting officer or to the public, (4) mobility of the vehicle, and (5) mobility or destruction of the evidence. Terrovona, 105 Wash.2d at 644, 716 P.2d 295 (citing State v. Counts, 99 Wash.2d 54, 60, 659 P.2d 1087 (1983)). According to the majority the scenario present here is the possible danger to the police or the public. However, a possible danger to the police or public does not automatically cause exigency justifying a warrantless entry. In other words, the six factor analysis determines exigency, not the factual scenario in which they are applied. See Counts, 99 Wash.2d at 60, 659 P.2d 1087 (cataloguing "five separate circumstances which could be termed `exigent'" (emphasis added)).
[3] "[T]his Court has not explicitly stated the [community caretaking] exception applies to article I, section 7 of the Washington Constitution." Kinzy, 141 Wash.2d at 386 n. 38, 5 P.3d 668.
[4] For example, some homes have external propane tanks. Some properties, such as farms, store fuel in large external tanks. Moreover, anhydrous ammonia is legitimately used in farming operations.