# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69866-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| PHILIP JOSE GONZALEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |
| | ) | |

LAU, J. — Philip Gonzalez appeals his possession of heroin conviction. He contends that police found drug evidence in his apartment during an unconstitutional search and the trial court erred in denying his CrR 3.6 suppression motion. Finding no error, we affirm.

## FACTS

The CrR 3.6 hearing testimony and the trial court's unchallenged findings establish the following facts. Around 5 a.m. on March 17, 2011, Grays Harbor County Deputy Sheriff Kevin Schrader responded to a robbery report. The reporting party, Tiffany Peters, told dispatch that two men entered her apartment, assaulted her boyfriend, Daniel Smith, took Smith's wallet and all of the phones from the apartment,

and fled. A third male suspect waited outside during the robbery. Deputy Schrader arrived at Peters' apartment and spoke with her and Smith. Smith described what the suspects wore during the robbery, and Peters told Deputy Schrader that the suspects left the scene in a white Toyota passenger vehicle with license plate number 996TYE. Smith told Deputy Schrader that he had an altercation with Philip Gonzalez about two months prior. Deputy Schrader was familiar with Gonzalez and knew that he drove a Toyota that matched Peters' description and had a very similar license plate number— 996TXK. Peters told Deputy Schrader that she was also familiar with Gonzalez's vehicle and "it could have been his vehicle that the suspects left in."

Deputy Schrader knew where Gonzalez lived. He had been "receiving tips for about four to six months prior [to the robbery] that [Gonzalez] was selling narcotics out of his residence" and he "had been watching [Gonzalez's] residence and contacting multiple people that were visiting his residence, and trying to establish enough for a search warrant." Report of Proceedings (RP) (Aug. 26, 2011) at 8. Deputy Schrader also knew that Gonzalez had recently purchased two firearms and obtained a concealed weapons permit.

Deputy Schrader drove to Gonzalez's apartment, arriving around 6:00 or 6:30 a.m. He found Gonzalez's white Toyota and felt its hood, noting that it was warm as if it had been recently driven. Deputy Schrader saw wet footprints on the stairway leading to Gonzalez's apartment. He went up the stairs and listened at Gonzalez's door "for maybe up to five minutes of what the subjects were talking about." RP (Aug. 26, 2011) at 10. While listening at the apartment door, Deputy Schrader heard three male voices talking about guns and drugs.

-2-

While Deputy Schrader was standing on the landing, the apartment door opened and Gonzalez walked out. When the door opened, Deputy Schrader immediately noticed the odor of marijuana smoke and burnt heroin. Deputy Schrader announced that he was from the sheriff's office and Gonzalez came out onto the landing and tried to shut the door behind him. Deputy Schrader heard other people running toward the back of the residence and slamming doors. He knew the apartment had a back balcony about 8 to 10 feet off the ground that afforded a means of escape.[1] He was concerned that the people inside the apartment "could possibly arm themselves and destroy evidence that was inside," so he entered the residence. RP (Aug. 26, 2011) at 13. He explained at the CrR 3.6 hearing why he chose not to stay outside on the landing:

> I believe that would have been a huge officer safety risk, just given the fact that guns were mentioned inside the residence already. I was there on the report of a robbery. I knew that there was a history of guns at the residence. Um, I did not feel safe just remaining there and allowing them to arm themselves.

RP (Aug. 26, 2011) at 14.[2]

Once inside, Deputy Schrader immediately noticed what he suspected to be heroin and marijuana, scales, and smoking devices on the living room table directly to the left. He went to the back of the apartment and found two men hiding in a bedroom. Meanwhile, Gonzalez remained on the landing outside the apartment with another officer. Police arrested all three men and transported them to jail.

---

[1] Deputy Schrader testified, "After interviewing all of [the] persons there at the residence, it was determined that somebody did jump off of that balcony and flee from us." RP (Aug. 26, 2011) at 12.

[2] Deputy Schrader's incident report is consistent with his CrR 3.6 testimony. He stated in the incident report, "Because of the fact that I knew that Gonzalez owned guns and that I just heard subjects talking about guns I entered the residence for Officer safety reasons to keep the subjects from arming themselves."

Based on the suspected controlled substances Deputy Schrader saw in the apartment, he applied for and obtained a search warrant to search Gonzalez's vehicle and apartment. The search revealed drugs, drug paraphernalia, and guns. Deputy Schrader also found clothing matching Smith's description of what the suspects wore during the robbery.

The State charged Gonzalez with possession of heroin. Gonzalez moved under CrR 3.6 to suppress evidence obtained during the search warrant's execution. He argued that Deputy Schrader's initial warrantless entry into his apartment was illegal, thus invalidating the subsequent search warrant. The trial court denied the motion on two grounds: (1) the warrantless entry qualified as a "protective sweep" and (2) exigent circumstances justified a warrantless entry. Following denial of his suppression motion, Gonzalez agreed to a bench trial on stipulated facts. The trial court found Gonzalez guilty of possession of heroin and imposed a standard range sentence.

## ANALYSIS

Gonzalez contends that Deputy Schrader illegally entered his apartment without a warrant. He claims no exception to the warrant requirement applied. The State responds that exigent circumstances justified Deputy Schrader's warrantless entry.[3]

---

[3] As discussed above, the trial court gave two reasons for denying Gonzalez's CrR 3.6 motion: (1) the search constituted a lawful "protective sweep" incident to Gonzalez's arrest and (2) exigent circumstances existed. Gonzalez argues on appeal that the search was unjustified under either theory. The State does not respond to Gonzalez's "protective sweep" argument and argues only that the search was justified under the exigent circumstances exception. We rest our decision on the exigent circumstances exception and do not address whether Deputy Schrader's entry constituted a lawful protective sweep. See State v. Costich, 152 Wn.2d 463, 477, 98 P.3d 795 (2004) (a reviewing court can affirm on any grounds supported by the record).

"We review a trial court's denial of a CrR 3.6 suppression motion to determine whether substantial evidence supports the trial court's challenged findings of fact and, if so, whether the findings support the trial court's conclusions of law." State v. Cole, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). Gonzalez does not assign error to the trial court's factual findings, so they are verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). We review the court's conclusions of law de novo. State v. Eisfeldt, 163 Wn.2d 628, 634, 185 P.3d 580 (2008).

The United States and Washington Constitutions prohibit most warrantless searches of homes. State v. Smith, 165 Wn.2d 511, 517, 199 P.3d 386 (2009). Police may only search without a warrant under one of the "'few jealously and carefully drawn exceptions to the warrant requirement.'" Smith, 165 Wn.2d at 517 (quoting State v. Kinzy, 141 Wn.2d 373, 384, 5 P.3d 668 (2000)). The State bears the burden of proving that any warrantless search fits within one of these exceptions. Smith, 165 Wn.2d at 517.

The State contends that Deputy Schrader's entry was permissible under the exigent circumstances exception to the warrant requirement. Under this exception, police may conduct a warrantless search when exigent circumstances justify the search. State v. Cardenas, 146 Wn.2d 400, 405, 47 P.3d 127, 57 P.3d 1156 (2002). "The rationale behind the exigent circumstances exception 'is to permit a warrantless search where the circumstances are such that obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence.'" Smith, 165 Wn.2d at 517 (quoting State v. Audley, 77 Wn. App. 897, 907, 894 P.2d 1359 (1995)). In determining whether exigent

-5-

circumstances exist, we consider the totality of the situation in which the circumstance arose. Smith, 165 Wn.2d at 518. Six nonexclusive factors guide this analysis:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry [can be] made peaceably.

Cardenas, 146 Wn.2d at 406. "[I]t is not necessary that every factor be met to find exigent circumstances, only that the factors are sufficient to show that the officers needed to act quickly." Cardenas, 146 Wn.2d at 408. Our Supreme Court

> has identified five circumstances from federal cases that "could be termed 'exigent'" circumstances. State v. Counts, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983). They include "(1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or to the public; (4) mobility of the vehicle; and (5) mobility or destruction of the evidence."

State v. Tibbles, 169 Wn.2d 364, 370, 236 P.3d 885 (2010) (quoting State v. Counts, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983)).

Our Supreme Court found exigent circumstances under facts similar to this case. In Smith, police officers received a tip that a stolen tanker truck containing toxic chemicals was located at a particular property containing a house, a shed, and several junk cars. Smith, 165 Wn.2d at 514. The officers were familiar with the property because they previously responded to methamphetamine-related incidents there. Smith, 165 Wn.2d at 515. While two officers secured the tanker truck, several other officers surrounded the house and announced their presence. Smith, 165 Wn.2d at 515. One officer looked through a window and saw an apparent rifle in the living room. Smith, 165 Wn.2d at 515. Two people left the house, and the officers handcuffed and

detained them. Smith, 165 Wn.2d at 515. Officers then looked in the open door and noticed that the apparent rifle was no longer where they had previously seen it. Smith, 165 Wn.2d at 515. They entered the house to perform a "security sweep," during which they found a shotgun and items consistent with methamphetamine production. Smith, 165 Wn.2d at 515-16. The officers later obtained a warrant based on the information gathered in the first search, and while executing the warrant, they discovered a methamphetamine lab. Smith, 165 Wn.2d at 516. Our Supreme Court held the initial warrantless entry justified under the exigent circumstances exception due to the presence of toxic chemicals and the officers' concern "that a person with the missing gun inside the house would shoot the pressurized tank of [chemicals]" or that "a person hiding in the house would shoot directly at the officers." Smith, 165 Wn.2d at 518.

In Cardenas, police officers responded to a home invasion and robbery report. Cardenas, 146 Wn.2d at 403. The victims described two male suspects, said one man was armed with a knife or gun, and described the items taken and the getaway vehicle. Smith, 165 Wn.2d at 403. The officers broadcast the robbery information over police radio and soon learned that a security guard at a local motel had seen a vehicle matching the victims' description pull into the motel parking lot. Smith, 165 Wn.2d at 403. The officers responded immediately and found the vehicle, noting that its hood was still warm and that some items in the backseat matched the victims' description of the items taken. Smith, 165 Wn.2d at 403. The officers were told that the vehicle's occupants had entered motel room 3. Smith, 165 Wn.2d at 403. One officer looked through a gap in room 3's window curtains and saw two men matching the victims' description. Smith, 165 Wn.2d at 404. When a second officer knocked on the door, the

first officer saw the two men dart to the back of the room. Smith, 165 Wn.2d at 404. A third officer then decided to enter the room. He slid the window open and saw both men but observed no weapons. He yelled at the men to put their hands up, pointed his gun inside, jumped through the window, and arrested them. Smith, 165 Wn.2d at 404. Our Supreme Court concluded that since five of the six factors were satisfied, exigent circumstances justified the warrantless entry:

> Although Cardenas does not take issue with factors (1) and (2), we agree with the trial court's conclusion that a serious felony, armed robbery, had been committed and that the officers had reason to believe the suspects may have been armed. We also agree with the trial court that factor (3) is satisfied. As the trial court noted in his factual findings, officers responded to the robbery scene within minutes of the incident. The victims reported they had just been robbed by two men. They gave a description of the items taken and the suspect vehicle. Shortly after broadcasting that information, police received a call from the Western Motel reporting the arrival of the suspect vehicle. While the vehicle did not have an orange door, it substantially matched the description given by the victims. It was a large, brown American car with a different color passenger door. Officers arrived at the motel within minutes of the report and located the vehicle. Its hood was still warm. The officers testified that the contents of the backseat matched the description of property taken from the victims. Although the items taken in isolation may not have been unusual, their presence under the circumstances permits a reasonable inference that the items were the same ones taken in the earlier robbery. Additionally, two witnesses at the motel had seen two men hurrying from the car into room 3.
> Accordingly, we find that the court's conclusion on factor (3) is supported by the court's findings. Similarly, factor (4) is satisfied based on the findings as recited above.
> Apart from the officers' observations made through the parted curtain, there is little to support the conclusion that the suspects were likely to escape unless swiftly apprehended. Thus, without the observations made by officers through the curtain opening, factor (5) is doubtful. Nevertheless, it is not necessary that every factor be met to find exigent circumstances, only that the factors are sufficient to show that the officers needed to act quickly. Finally, factor (6) is satisfied here. Police were in full uniform and yelled, "get your hands up," placing the occupants on notice that the intruders were law enforcement officers, thus reducing the potential for violence. Additionally, the police did not break down the door but entered through an unlocked window. As the trial court found, the potential for harm was low. Weighing the [six exigent circumstances]

factors, we conclude that exigent circumstances justified the entry in this case, even if we accept Cardenas' claims.

Cardenas, 146 Wn.2d at 407-08 (citations omitted).[4]

Like the officers in Smith and Cardenas, Deputy Schrader identified a legitimate threat to officer safety and evidence preservation sufficient to constitute an exigent circumstance. The undisputed facts establish that he responded to the robbery call soon after the incident. The victims reported they were robbed and assaulted by three men (two entered the apartment and one waited outside). The victims described the items taken, the suspects' clothing, and the suspects' vehicle. While the vehicle's license plate number was not exactly the number the victims reported, the vehicle substantially matched the victims' description and the first four numbers/letters of the plate number matched. Deputy Schrader arrived at Gonzalez's apartment shortly after interviewing the victims and located the vehicle. Its hood was still warm. While there was no allegation that the suspects were armed during the robbery, Deputy Schrader knew Gonzalez had recently purchased handguns and obtained a concealed weapons permit, permitting a reasonable inference that weapons could be present in the

_____

[4] See also State v. Flowers, 57 Wn. App. 636, 643-44, 789 P.2d 333 (1990) (warrantless "entry" and arrest of defendant that occurred when he was ordered out of his motel room at gunpoint was justified by exigent circumstances; court emphasized that the grave offense of robbery was involved, officers reasonably believed suspect was armed and willing to use a gun, and "entry" was peaceable and less intrusive than if officers had entered the motel room to arrest the defendant); State v. Machado, 54 Wn. App. 771, 776-77, 775 P.2d 997 (1989) (exigent circumstances justified entry and arrest of defendant at accomplice's home where defendant was wanted for first degree robbery and there was reason to believe he was armed, similarity of descriptions by witnesses and a police officer who stopped the vehicle the defendant was driving shortly after the robbery indicated the defendant was the man who committed the robbery, officers had strong reason to believe defendant was in the accomplice's home due to presence of his car outside and witness information, and entry was peaceful, made in the early morning, and not part of a preplanned operation).

apartment. While listening at the apartment door, he heard three voices discussing guns and drugs. There was at least a reasonable suspicion that Gonzalez and the other men in the apartment may have been involved in the home invasion, assault, and robbery or that Gonzalez's vehicle was used to commit the crimes.

When Gonzalez opened the door, Deputy Schrader smelled marijuana and heroin and heard other people rushing toward the back of the apartment. He knew that the back of the apartment afforded a means of escape. From these facts, Deputy Schrader reasonably believed the other suspects could escape, destroy evidence, or arm themselves with any weapons present in the apartment—thus compromising officer safety.

The trial court's factual findings support its conclusion that exigent circumstances existed. A home invasion, assault, and robbery is a serious and violent crime. See Machado, 54 Wn. App. at 776 (robbery is a "grave offense"); Flowers, 57 Wn. App. at 643 (same). Deputy Schrader (1) reasonably believed the suspects could arm themselves in the apartment, (2) had reasonably trustworthy information that Gonzalez and the other men in the apartment committed the robbery, (3) knew these suspects were in the apartment, and (4) knew the suspects had a means of escape if not swiftly apprehended. Evidence suggests the deputy entered the apartment peacefully.[5] The totality of the circumstances indicates that Deputy Schrader reasonably concluded he needed to act quickly "'because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence.'"

---

[5] Like in Machado, the entry here occurred early in the morning and no evidence indicates it was a preplanned operation.

Smith, 165 Wn.2d at 517 (quoting Audley, 77 Wn. App. at 907). Exigent circumstances justified the initial warrantless entry.

## CONCLUSION

Because exigent circumstances justified Deputy Schrader's entry into Gonzalez's apartment, the trial court properly denied Gonzalez's suppression motion. We affirm.

WE CONCUR: