IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37070-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| EDWARD JON GUNN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Edward Gunn appeals after a jury found him guilty of

possession of methamphetamine. He argues the trial court erred in denying his motion to

suppress the drug evidence. Specifically, he argues information provided by an informant

to law enforcement was not sufficiently reliable to support stopping and detaining him.

We disagree and affirm.

FACTS

On June 9, 2018, Sergeant Michael Jordan of the Whitman County Sheriff's Office

was on duty and provided backup to Officer Handley with an arrestee, Amy Trujillo.

Sergeant Jordan assisted by searching Ms. Trujillo's purse. He discovered needles, a

container with heroin residue, and a digital scale with heroin residue. Officer Handley

arrested Ms. Trujillo for possession of a controlled substance.

Before going to jail, Ms. Trujillo offered information regarding an individual selling drugs in the Whitman County area. Sergeant Jordan told Ms. Trujillo if she provided information about the individual selling drugs, he would not book her into jail and he would talk with the prosecutor about reducing the charges against her.

Ms. Trujillo told Sergeant Jordan that she had bought drugs from Edward Gunn in the past. She explained she had earlier arranged to buy $200 worth of methamphetamine from him that night. She also said that Gunn had raped her in the past and she was afraid of him.

Sergeant Jordan asked Ms. Trujillo to call Gunn. While in the back of Sergeant Jordan's car, with her telephone on speaker, Ms. Trujillo called Gunn and asked to buy a "ball"[1] of methamphetamine for $200. Sergeant Jordan could hear a man's voice over the speaker phone say he had drugs with him in his car, and he was at Walgreen's in Moscow and was driving back to Pullman. Ms. Trujillo then arranged to meet the man at his house to make the purchase.

---

[1] A "ball" of methamphetamine is drug lingo for one-eighth of one ounce of methamphetamine.

Sergeant Jordan believed that Ms. Trujillo's tip that Gunn would sell her methamphetamine was reliable. Sergeant Jordan had worked with her in the past and had apprehended two subjects with felony warrants based on her information.

Ms. Trujillo told Sergeant Jordan where Gunn lived and that he often was accompanied by a person who was armed. The address she provided was consistent with Gunn's address in law enforcement's database. Further, Sergeant Jordan looked at Gunn's criminal history, which showed he had a recent criminal conviction for delivery of a controlled substance.

Sergeant Jordan then arranged with Pullman police officers for them to stop Gunn when he arrived at his residence. Ms. Trujillo told Sergeant Jordan that Gunn drove a blue Oldsmobile. Sergeant Jordan waited with Ms. Trujillo in his car near Gunn's residence for Gunn to arrive. About 30 to 45 minutes after Ms. Trujillo's earlier phone conversation with the man, Sergeant Jordan saw a blue Oldsmobile turn down the street where Gunn lived. Ms. Trujillo confirmed that the car belonged to Gunn. Sergeant Jordan advised the Pullman police officers that the Oldsmobile was Gunn's, and the officers stopped the car. Gunn was inside the car alone.

Law enforcement detained Gunn, advised him of his *Miranda*[2] rights, and Gunn agreed to answer questions. Gunn admitted to Sergeant Jordan that he had five grams of methamphetamine in his car. Gunn stated he was going to sell the drugs to friends in the Pullman area. Sergeant Jordan recovered two small "baggies" from Gunn's car, and Gunn admitted the white substance in the baggies was methamphetamine.

The State charged Gunn with two crimes, including one count of possession of a controlled substance with intent to deliver. Before trial, Gunn moved to suppress the methamphetamine recovered from his car. Gunn argued that officers did not have articulable suspicion to stop his car because Ms. Trujillo's information was unreliable.

The court held a CrR 3.6 hearing and the testimony reflected the aforementioned facts. The trial court found Ms. Trujillo demonstrated more than sufficient indicia of reliability and denied Gunn's motion to suppress the methamphetamine. The court entered the following relevant findings of fact:

> 2.1    Ms. Trujillo may have had a mixed motive for turning in Mr. Gunn. She might have had more motive than just to rid society of drug deals, she may have not liked him.
> 2.2    She had a motive for truthfulness, she was trying to get a deal.
> 2.3    The information she gave, was accurate, reliable and based on her observation of her telephone call she had with him using drug language.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2.4    She called the phone number she indicated was the defendant's
       phone number, the voice on the phone was a male voice and they
       arranged a buy at his house in Pullman.

2.5    She described the defendant's car, she identified the defendant's car
       and it was exactly the car that she described that showed up.

2.6    She gave the defendant's name when and she identified where he
       was coming from and when he was going to get there.

2.7    Everything she said would happen did in fact happen.

2.8    Sgt. Jordan did some background checking on the defendant [and]
       found that he had drug possession history and confirmed his address.

2.9    Sgt. Jordan heard a male voice on speaker phone agree to sell Ms.
       Trujillo $200 worth of meth, that he had the drugs in his car, and that
       he was in Moscow and would meet her at his house in Pullman.

2.10   When the defendant's blue Oldsmobile appeared at the dead end of
       the street on which he lived at about the expected time, it was further
       corroboration of the informant's information.

Clerk's Papers (CP) at 42.

The trial court concluded that Ms. Trujillo's statement that Gunn agreed to sell

methamphetamine to her had sufficient indicia of reliability. And because Ms. Trujillo

was reliable and her statements had sufficient indicia of reliability, the trial court

concluded that the *Terry*[3] stop was based on reasonable articulable suspicion and denied

Gunn's motion to suppress.

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Gunn proceeded to a jury trial. The jury found Gunn not guilty of possession of a controlled substance with intent to deliver, but guilty of the lesser included offense of possession of a controlled substance.

Gunn timely appealed.

ANALYSIS

Gunn contends that substantial evidence does not support the trial court's finding of fact 2.7, and the trial court erred by concluding that the officers had a reasonable and articulable suspicion to stop him. We disagree.

We review challenged findings of fact to determine whether they are supported by substantial evidence. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). "'Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.'" *State v. Schultz*, 170 Wn.2d 746, 753, 248 P.3d 484 (2011) (quoting *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)). Unchallenged findings of fact from a suppression hearing are verities on appeal. *State v. Smith*, 165 Wn.2d 511, 516, 199 P.3d 386 (2009). This court reviews a trial court's conclusions of law pertaining to suppression of evidence de novo. *Id.*

The challenged finding reads: "Everything [Ms. Trujillo] said would happen did in fact happen." CP at 42 (Finding of Fact 2.7). Gunn contends this finding is not supported by substantial evidence. He argues: (1) Ms. Trujillo told law enforcement she already had an arrangement with Gunn, but then she called Gunn and made the arrangement, (2) she told police she was extremely frightened of Gunn, yet he was one of her drug dealers, (3) the man on the phone said he was in Moscow, about a 15 minute drive from Gunn's house, but Gunn did not arrive at his house until 30 to 45 minutes after the telephone conversation, and (4) Ms. Trujillo told police that Gunn was often accompanied by an armed individual in his car but he was alone when law enforcement detained him.

First, the fact that Ms. Trujillo already had an arrangement with Gunn, but then called again at the direction of law enforcement does not undercut the trial court's finding. The telephone call in the presence of Sergeant Jordan was consistent with the details Ms. Trujillo provided before the call that she was going to buy $200 of methamphetamine from Gunn at his house. Second, Ms. Trujillo could be fearful of Gunn and also buy drugs from him.

Third, Gunn contends he could not have been the man on the telephone because the man on the phone said he was driving to his house from Moscow, but he did not

7

arrive at his house in Pullman until 30 to 45 minutes after the phone conversation. At the suppression hearing, Sergeant Jordan testified that Moscow is a 15 minute drive from Pullman, depending on traffic. We note that the man on the phone did not say he was driving directly to his house. In addition, there may have been some traffic. The fact that Gunn was not at his house when police arrived, but arrived shortly after expected, provides some confirmation that the man on the phone was Gunn. It certainly is not *inconsistent* with the premise that Gunn was the man on the phone.

Fourth, Ms. Trujillo's statement that Gunn "often" travels with an armed individual is not necessarily inconsistent with the fact that Gunn was driving alone when Pullman officers stopped him. It may be that Gunn was driving with an armed individual that day, but took that individual home before being stopped by officers at his own house. Or it may be that on this particular occasion, Gunn was not accompanied by an armed individual. Ms. Trujillo used the term "often," not "always." The fact that Gunn was not accompanied by an armed individual when he was stopped at his house does not necessarily decrease the reliability of Ms. Trujillo's statement.

We conclude there is substantial evidence in the record to persuade a fair-minded, rational person of the truth of the finding that everything Ms. Trujillo predicted came true. But even if everything Ms. Trujillo predicted did not come true, the gravamen of her

information was sufficiently accurate to sustain the more important finding that the information provided by Ms. Trujillo was reliable. Notably, Ms. Trujillo told Sergeant Jordan she had arranged to buy $200 worth of methamphetamine from Gunn, and two small baggies of methamphetamine were found in his car. Also, Ms. Trujillo provided an accurate address for Gunn's house and an accurate description of the car Gunn would be driving. Further, Gunn's car arrived at his house shortly after expected.

We now turn to Gunn's contention that law enforcement lacked a reasonable and articulable suspicion to detain him.

"As a general rule, warrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment [to the United States Constitution] and article I, section 7 of the Washington State Constitution." *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). "There are, however, a few 'jealously and carefully drawn exceptions' to the warrant requirement which provide for those cases where the societal costs of obtaining a warrant . . . outweigh the reasons for prior recourse to a neutral magistrate." *State v. Williams*, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984) (internal quotation marks omitted) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)). The State carries the burden of proving the seizure falls within one of the exceptions by clear and convincing evidence. *State v. Garvin*, 166 Wn.2d 242, 250, 207

9

P.3d 1266 (2009). A *Terry* investigative stop is one exception to the warrant requirement. *Id.* at 249-50.

To conduct a *Terry* stop, an officer must have "reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the inception of the stop." *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). The court examines the totality of the circumstances known to the officer, including the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty. *Id.* The officer's suspicion must be individualized to the person being stopped. *Id.* at 159.

If a *Terry* stop is based on information provided by an informant, the court must consider whether the informant's tip possesses "sufficient 'indicia of reliability.'" *State v. Marcum*, 149 Wn. App. 894, 903-04, 205 P.3d 969 (2009) (internal quotation marks omitted) (quoting *State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980)). When determining whether sufficient "indicia of reliability" exists, courts will consider "primarily '(1) whether the informant is reliable, (2) whether the information was obtained in a reliable fashion, and (3) whether the officers can corroborate any details of the informant's tip.'" *State v. Howerton*, 187 Wn. App. 357, 365, 348 P.3d 781 (2015) (quoting *State v. Lee*, 147 Wn. App. 912, 918, 199 P.3d 445 (2008)).

First, the trial court found that Ms. Trujillo was reliable, and Gunn has not challenged this finding. The finding is supported by substantial evidence. Here, Ms. Trujillo offered Sergeant Jordan information in order to avoid being booked into jail and to receive favor with the prosecutor. In order to receive this deal, she had to be truthful. Ms. Trujillo gave this information in conjunction with statements against her own penal interest. An informant's admission against penal interest can favor truthfulness and reliability. *State v. Chamberlin*, 161 Wn.2d 30, 42, 162 P.3d 389 (2007). Sergeant Jordan had used information provided by Ms. Trujillo in the past to execute two felony arrest warrants.

Second, Sergeant Jordan obtained this information in a reliable fashion. Ms. Trujillo placed a call to a person she said was Gunn, and the sergeant heard a man's voice confirm he would sell $200 of methamphetamine to her at his house in Pullman. Although Sergeant Jordan did not know Gunn's voice, he could reasonably assume that Ms. Trujillo called Gunn. Ms. Trujillo had proved herself reliable in the past, and Sergeant Jordan could have later compared the phone number Ms. Trujillo called with Gunn's phone number. If the numbers did not match, Ms. Trujillo would not receive favorable consideration in a plea deal. Although Sergeant Jordan did not compare the

11

telephone numbers, Ms. Trujillo knew he could.  This enhanced the reliability that the call Ms. Trujillo made was to Gunn.

Third, Sergeant Jordan corroborated details of Ms. Trujillo's tip.  Sergeant Jordan heard a man agree to sell $200 worth of methamphetamine to Ms. Trujillo, say that he was driving from Moscow, Idaho, to his house in Pullman, and that the exchange would take place at his house.  Ms. Trujillo said she had purchased drugs from Gunn in the past, described where Gunn lived, and described Gunn's car as a blue Oldsmobile.  Sergeant Jordan corroborated that Gunn had a recent conviction for delivery of a controlled substance, corroborated Gunn's address, and corroborated that a blue Oldsmobile drove toward Gunn's residence near the anticipated time.

The trial court did not err in concluding that Ms. Trujillo's tip to Sergeant Jordan contained sufficient indicia of reliability and that law enforcement had a reasonable articulable suspicion to stop Gunn.  We conclude the trial court did not err by denying Gunn's motion to suppress the evidence of drugs.

No. 37070-4-III
*State v. Gunn*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____         _____
Pennell, C.J.                                                    Fearing, J.